THOMAS, JR., administrator, *vs.* MORRISETT, executor.

[This case was argued at the last term, and the decision reserved.]

1. The personal property of a deceased person passes and is to be administered according to the law of his domicile.

(*a.*) A mortgage on lands in this state, given to secure a debt, does not convey title, but only creates a lien.

2. It may be laid down as a general proposition, applicable to the proceedings and judgments of the courts of other states of the union, that they are entitled to have full faith and credit given them in this as well as in every other state. A judgment of another state determining the domicile of a deceased person and probating her will is no exception to the rule; and the issues so passed upon cannot be opened and inquired into again in a proceeding substantially between the same parties and involving the same issues in the courts of this state.

3. No general administration upon an estate should have been granted in this state, where there was a will in existence which was afterwards proved and admitted to record, and if such administration has been granted in this state, and afterwards a will has been established, this would work a revocation, except as to such portions of the estate as had been fully administered prior to the production and probate of the will.

4. In this case there was no necessity for any one of the limited or partial forms of administration, and the application for general administration having been made and granted pending proceedings to prove the will in another state, of which the parties at whose instance administration was granted had full knowledge, they being parties to the other proceedings, it is plain that it was thus sought

to obviate the force of any judgment which might be rendered in the other state, and prevent its receiving here the full faith and credit to which it was entitled under the constitution and laws of the United States and under the spirit of comity contained in the Code of this state.  It was therefore collusive and void.

5. Whether certain charitable bequests by which more than one-third of the testatrix's estate was left to certain charitable, religious and educational institutions, to the exclusion of her children, be void or not, yet as there are other bequests, and the will appoints an executor, the existence of the charitable bequests will not prevent the grant of administration upon the estate under the will.

BLANDFORD, J., concurred.

JACKSON, C. J., dissented.

March 23, 1886.

Administrators and Executors.   Comity.   Judgments. Wills.   Legacies.   Before Judge WILLIS.   Muscogee Superior Court.   May Term, 1885.

Reported in the decision.

THOMAS & CHANDLER; McNEILL & LEVY; E. H. ORR; HARRISON & PEEPLES, for plaintiff in error.

SMITH & RUSSELL; E. P. MORRISETT, for defendant.

HALL, Justice.

1. That the personal property of a deceased person passes and is to be administered according to the law of his domicile, is a clear proposition by the law both of England and of this country, and indeed of every other country in the world where law has the semblance of science. Such property has no locality, but is subject to the law that governs the person of the owner, both with respect to its disposition and transmission, either by succession or the act of the party.  If he dies it is not the law of the country in which the property is, but the law of the country of which he is a subject, that will regulate the succession. It is to be distributed according to the *jus domicilii,* as

v 76-25

we decided in *Grote and another, guardians, vs. Pace, adm'r,* 71 *Ga.,* 231, head-note 3(c), 237, and citations there. The testatrix in this case died in Muscogee county, Georgia, having previously executed her will in Montgomery county, Alabama, to which she annexed a codicil in Harris county, Georgia; after this codicil was executed, she transmitted it, together with her will, to her executor, who then resided in Montgomery, Alabama, where he has since continued to reside. She left no real estate in Georgia, or elsewhere, so far as appears from the record. At her death, the only personal property she had in Georgia was a trifling sum of money, about one dollar, deposited in a bank in Columbus, and a debt due from parties residing here, secured by a mortgage on lands in this state, which under our law conveyed no title to the same, but created only a lien thereon. Code, §1954. This will was propounded for probate by the executor in the court of probate of Montgomery county, Alabama, and its probate in that court was resisted by all the heirs at law, upon the ground that the court had no jurisdiction of the matter, because the testatrix was not domiciled in that county and state at the time of her death, but then had her domicile in Muscogee county, in the state of Georgia. Upon the trial of the issue, judgment was rendered by the court overruling the *caveat,* and admitting the will to probate and record, from which an appeal was taken by the heirs at law to the Supreme Court of Alabama, where the judgment of the lower court was affirmed. Soon after the will was presented for probate to the Alabama court, and before judgment was rendered on the issue tendered in that court by the heirs at law, Grigsby E. Thomas, at their instance, applied to the court of ordinary of Muscogee county, where testatrix died, and obtained general administration upon her estate, as though she had died intestate. At the termination of the proceedings touching the probate of the will in the Alabama courts, the executor named in that will made application to the court of ordinary of Musco-

gee county to vacate and revoke the administration it had granted on the estate, and that application being refused on the showing made by the administrator, the executor took an appeal to the superior court, and on the appeal trial, a judgment was rendered abating and revoking the administration, and to this Thomas, the administrator, excepted and assigned various errors to the judgment then awarded.

2. Whether such assignment of errors can be upheld will depend in large measure upon the validity of the proceedings in the courts of Alabama touching the probate and record of the will and the force and effect to be given to their judgment in this state. It may be laid down as a general proposition applicable to the proceedings and judgments of the courts of other states of the Union, that, by the constitution of the United States, Art. iv., §1, they are entitled to have full faith and credit given to them in this state, as well as in every other state; and by the act of Congress of May 19th, 1790, passed in pursuance of this clause of the constitution, prescribing the manner in which such records are to be exemplified and the effect to be given them in other states, it is declared in express terms that they " shall have such faith and credit given to them in every other court within the United States as they have by law or usage in the courts of the state from which the said records are or shall be taken." To the same effect is the act of Congress, approved 27th March, 1804. Both of these acts are appended to section 3830 of our Code. Giving to the judgment of the court of probate of Montgomery county, Alabama, affirmed by the Supreme Court of that state, the full faith and credit as it has by law or usage in the state where rendered, we are led to inquire whether the issues passed upon and concluded by that judgment can be opened and inquired into again in a proceeding pending in our courts substantially between the same parties and involving the identical issue. The lower court held that it could not, and rejected all

offers of testimony tending to that end.   There can be no
doubt of the correctness of these decisions, unless there is
something peculiar in the question of domicile made by the
heirs at law of the testatrix, which was determined against
them, as appears from and is necessarily included in the
judgment of the probate court; and this, we are satisfied,
forms no exception to the general rule.   We determined
this precise point in *Lord vs. Cannon*, at the last term of
this court.  75 *Ga.*, 300.

3.  Conceding to this judgment in our courts the full
faith and credit to which it is entitled by. the law and
usage of the courts of Alabama, we agree with the superior
court that no general administration should have been
granted on an estate when there was a will in existence,.
which was afterwards proved and admitted to record. This
is a well settled principle, recognized both by judicial de-.
cisions and text-writers.   In *Fields et al. vs. Carlton et al.*,
decided at the last term of this court (75 *Ga.*, 554), we
held that, where a will had been proved in this state, a
grant of administration upon the estate was void, and to
this effect was the decision of the Supreme Court of the
United States in Griffith *vs.* Frazier, 8 Cranch, 9, and to
these many others might be added, but it would be unneces-
sary labor, as there is not an authority which questions the
point there ruled.   Applied to an administration granted
before a will, which was afterwards established, was dis-
covered, the same principle would work its revocation, ex-
cept as to such portions of the estate as had been fully
administered prior to its production and probate.   Wil-
liams Ex'rs (Perkins's ed.), 643, 644, *et seq.*, and citations
in foot notes; Jennings *vs.* Moses, 38 Ala., 402, is directly
on the point.   Compare with Curtis *vs.* Williams, 33 Ala.,
570.   These principles are not varied in the slightest de-
gree by the fact that the will has been proved in another
state, provided that the testator had his domicile there at
the time of his death, and *a fortiori*, where the jurisdiction
has been contested by the heirs at law upon the ground

that the forum taking cognizance of the probate was not that of the domicile, and that question has been adjudged against them. .In this respect, it is important to distinguish between general and limited administrations, such as administrators *ad colligendum, pendente lite, durante minoritate, durante absentia, de bonis non* or *de bonis non cum testamento annexo;* in short, such as are required to complete an administration already begun and partially, but not completely, executed, or such as are auxiliary to the principal or general administration and are necessary either to obtain such an administration, or, after it is granted, to render it effectual and complete.

· 4. In this case there was no necessity for any one of these limited or partial administrations. This application for general administration was made and granted pending proceedings to prove this will in a sister state, of which the parties at whose instance it was taken had full knowledge, as is evidenced by the fact that they were parties to those proceedings. It is plain that they at least sought by this proceeding to obviate the force of any judgment that might be rendered against them in Alabama, and in this indirect mode to accomplish what they could not effect by a resort to more open and direct methods; and when the judgment was rendered against them, thus to prevent its receiving here the full faith and credit to which it is entitled, not only under the supreme law of the land, but under that liberal spirit of comity and justice which our own Code and decisions enjoin. *Guerard vs. Guerard,* 73 *Ga.,* 506. The purpose of this administration was .manifestly collusive, and for that reason it was void. Schouler's Ex'rs and Adm'rs, §91, and citations.

The rights and property of the testator in this state, as we have seen, consisted only in a small sum of money deposited in a bank and a considerable amount of choses in action secured by notes and mortgages. No resident of the state was interested in her estate, either as creditor, legatee or distributee, and there had been no valid grant

of administration by our courts upon the estate. There was no necessity for the administration to collect the assets belonging to it and to transmit them to her representative in Alabama. By pursuing the directions of our Code, he could accomplish these purposes as effectually and with much less expense than it could be done through the medium of this administration. That he had ample power under our law, in virtue of his Alabama letters testamentary, to check this deposit from the bank and to institute suits and recover the amount of indebtedness to her from citizens of this state, and to enforce all liens given for their security, just as though these letters testamentary had been granted by our local tribunal, see Code. §§2614 to 2618, both inclusive, and citations.

5. But it is insisted that there was a necessity for this administration to prevent the violation of the public policy of the state, inasmuch as this testator, whose heirs at law were her children, by her will devised more than one-third of her estate to certain charitable, religious and educational institutions to the exclusion of her children, and that such devises are declared by our Code, §2419, to be void. Such charitable devise, in order to be valid, must be in a will executed at least ninety days before the death of the testator. This will contains other bequests and appoints an executor; and whether the charitable bequests be invalid or not, that fact does not interfere with the administration of the estate under the will. It was expressly decided, in *Wetter, guardian, et al. vs. Habersham et al., executors*, 60 *Ga.*, 194, that where a will was properly executed by a person having testamentary capacity, the court should order it to probate and record, leaving all questions of construction and the fate of charitable or other particular bequests for action of the parties or future direction in the proper court, as the case may require. This is the deduction drawn in that case from the decision in *Reynolds vs. Bristow*, 37 *Ga.*, 283, which was reviewed and affirmed by this court. In other words, this entire estate passes into

the hands of the executor, and he is to administer it under the direction of the court having jurisdiction of the matter; and as it has already been shown that this belongs to the courts of Alabama, we are relieved from the consideration of the question, and refer it to those tribunals for their adjudication. In fine, this is an Alabama and not a Georgia will.

Neither the act of the 25th of September, 1883 (Acts, pp. 100 and 101), nor that of the 16th of December, 1878 (Acts, 146), of which it is amendatory, or any preceding acts upon the same subject (Code, §§2434(a), 2435, 2435(a), 2435(b), contain any expression contravening this view; on the contrary, they are, at least impliedly and necessarily so, in entire accord with, and sustain and support it. They all make provision for the probate and execution of wills made in other states and foreign countries, which are to operate in this state upon property located here, and which is to be administered, as to the property bequeathed in accordance with and under our local law. It would thence follow, upon the general principles we have discussed, without an expression to that effect, in the act of 1883, that no will repugnant to our declared policy, and designed to take effect and to be carried out here, could be valid and operative. This disposes of all the questions made in the record and sustains the several rulings, as well as the entire judgment, of the superior court.

Judgment affirmed.

BLANDFORD, Justice, concurred, but furnished no written opinion.

JACKSON, Chief Justice, dissenting.

Mrs. Merrill died in Muscogee county, Georgia, in possession of personal effects therein, on the 13th of February, 1884, at the residence of Grigsby E. Thomas, having been for several months a resident of the state of Georgia, and at the time of her death having her domicile in the county

of Muscogee, as contended and offered in proof by Thomas.

On the 4th of March following, Thomas applied for letters of administration upon her estate, and on the following April, the court of ordinary regularly and according to law granted him letters of administration on the entire estate.

On the 2d of February, 1885, E. P. Morrisett moved in the said court of ordinary for the revocation of said letters, on the ground that Mrs. Merrill had left a will, and that this will had been admitted to probate in Montgomery county, Alabama. The court of ordinary refused the motion, but on appeal to the superior court, by trial by jury, before Judge Willis, and under his charge, the judgment of the ordinary was reversed, and a judgment revoking the letters was entered. To that judgment of the superior court Thomas, the administrator, excepted. My brethren in this court coincide in opinion with Judge Willis, and this court affirm his judgment and the result below. From that conclusion I dissent.

Substantially the following are the facts touching the will and its probate : A will before two witnesses was made in Montgomery, Alabama, on the 26th day of July, 1883. On the 21st day of September, 1883, a codicil thereto was executed before three witnesses in Harris county, Georgia; and this will and codicil form the testamentary paper which was admitted to probate in Montgomery county, Alabama, on the 29th of July, 1884. On the 30th of June, 1884 (possibly a mistake in the record for July, 1884), letters testamentary were granted to Morrisett, but revoked on the 21st of October, 1884, and re-issued on the 11th of March 1885, after the return from the Supreme Court; but the record nowhere shows the letters so issued put in evidence at all.

The entire will and codicil makes a paper for charitable uses, either directly or contingently, except a direction of expenses of burial and tombstone, and a legacy of one hundred dollars to a granddaughter. Not one cent is given

to either of three daughters then in life, one living in Montgomery, Alabama, and the other two in Columbus, Mississippi, the three being her only heirs and her own children.

The questions made are of much moment, and require a close examination of the law upon the above facts. They are:

First. Did Morrisett have any standing in court at all in the suit he brought in this state, as a foreign executor or executor of a sister state, to set aside a judgment of a court of this state?

Secondly.. Did the Alabama judgment on the question of jurisdiction of that court of the subject-matter, it being the issue of domicile there or in Georgia, conclude Thomas, the Georgia administrator, and was the court below right in excluding all evidence going to show that the domicile was in Georgia by the testatrix's own selection prior to her death, thus making the last domicile within the jurisdiction of the court of ordinary of Muscogee county, Georgia, and without that of the Alabama court of probate, and thereby fixing Muscogee county, Georgia, as the legal venue for probate of a will, if valid by Georgia law, or the grant of administration, if Mrs. Merrill died intestate?

Thirdly. Does the judgment of a sister state on a plea to the jurisdiction conclude heirs at law resident in another state, who appear before the court by counsel solely for the purpose of denying the jurisdiction of the sister state over the subject-matter and their persons; and if such non-resident heirs at law be concluded because of their appearance by counsel for that purpose, and who make only that issue, is the administrator, appointed by still another state, with no appearance before the court rendering the judgment, and without service of any sort upon him in that state or in his own state, and thus no party, also concluded by that judgment, as privy to the judgment, because the heirs appeared and made the jurisdictional plea?

Fourthly. Should a Georgia court revoke its own prior

judgment on the same issue of domicile and jurisdiction thereby, at the instance and on the motion of an executor producing a subsequent judgment on the identical issue of domicile, and thereby jurisdiction?

Fifthly. Should the court in Georgia revoke and annul its own judgment granting letters of administration on satisfactory evidence, because the Alabama court of probate, on evidence before it and under the laws of Alabama, set up a will contrary to the distinctive policy of Georgia and in the teeth of a statute of Georgia prohibiting such a will, which excludes the children of the testatrix from the entire estate, and gives to charitable, religious and educational uses more than one-third thereof?

Sixthly. Should this court for correction of errors approve and affirm the court below in rendering such a judgment, when other bequests are trifling, and the record shows neither the value nor character of the Georgia or Alabama estate left by the deceased, and thus leaves this court ignorant whether there was not enough in Alabama or elsewhere to pay those little valid bequests without disturbing the effects in Georgia and turning them over to disposal by provisions of a will prohibited by her statute and policy?

1. The first question is answered by statute and decisions thereon. Prior to the act of 1850, codified in sections 2614 and 2615 of the Code, no executor appointed in another state could sue at all or have any right of action here at all. *Mansfield and Ives, adm'rs, vs. Turpin & Clements*, 32 *Ga.*, 260. By that act, as codified with subsequent acts, he must file, pending the action of the case, before judgment can be had for him, " a properly authenticated exemplification of the letters testamentary or of administration .. . . with the clerk of the court, to become a part of the record." Unless this is done, the case will be nonsuited. 32 *Ga.*, 260, *supra*.

In this case at bar, no authenticated copy or exemplification of the letters testamentary was deposited with the

clerk to become part of the record, nor were any such let-
ters introduced in evidence, or made part of any record,
so far as appears in the bill of exceptions or the record of
the case.

The only exemplification here, in the case at bar, is of
the order for letters, which this court decided by a unani-
mous bench would not suffice. *Turner et al., administra-
tors, vs. Linam*, 55 *Ga.*, 253. It is the exemplification of
the letters, not of the judgment ordering them, which is re-
quired. By the laws of Alabama, the letters are spread on
the record of the probate court, and it is the exemplifica-
tion of the record of those letters which must be filed with
the clerk and produced in evidence in the Georgia court
before the action can be prosecuted to judgment. The judg-
ment in *Turner et al., administrators, vs. Linam* is directly
in point. There, as here, there were the filing and evidence
of an exemplification of the order of appointment, and
that letters issued, but no exemplification or copy of the
letters, and without it the administrator, in *Turner vs.
Linam*, was nonsuited by the court below, and that judg-
ment was affirmed by this court. It would, therefore, seem
that the court of ordinary was right in dismissing the action
of defendant in error, and the superior court wrong in
maintaining it. If, without strictly complying with the
statute, recovery could not be had on an open account, as in
*Mansfield and Ives, administrators, vs. Turpin & Clements*
in 32d *Ga.*, *supra*, or of a tract of land, as in *Turner et al.,
administrators, vs. Linam* in the 55th *Ga.*, *supra*, how
can the whole of the property in Georgia be recovered by
vacating a solemn judgment and depriving the adminis-
trator in Georgia of his judgment title to the property in
this state without the same compliance with our statute
law?

2. Secondly: Was Thomas, the Georgia administrator,
concluded by the Alabama judgment on the question of
the domicile of Mrs. Merrill in Alabama, and thus of the
jurisdiction of the probate court there? It is a question

of jurisdiction of the subject-matter—the probate of the will. If the probate court had no jurisdiction of the disposition of the decedent's estate by reason of her domicile, either in granting letters of administration if she died intestate, or in admitting her will to probate if she died testate, the judgment of probate by that court is void for want of jurisdiction, and can be attacked anywhere as void; and though the fact of jurisdiction be passed upon by such court, and be stated in the exemplification of the record of the judgment, as decided by that court, such alleged fact, so passed upon and stated of record, may be attacked in any sister state by its courts whenever an effort is made to give it effect there.

In Thompson *vs.* Whitman, 18 Wallace, 457, the question came before the Supreme Court of the United States, and that court held, Mr. Justice Bradley delivering the opinion in an elaborate argument, that "Neither the constitutional provision that full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state, nor the act of Congress passed in pursuance thereof, prevents an inquiry into the jurisdiction of the court by which a judgment offered in evidence was rendered;" that "the record of a judgment rendered in another state may be contradicted as to the facts necessary to give the court jurisdiction; and if it be shown that such facts did not exist, the record will be a nullity, notwithstanding it may recite that they did exist;" and that "want of jurisdiction may be shown either as to the subject-matter or the person, or in proceedings *in rem* as to the thing."

That was a case where, by the law of New Jersey, non-residents were prohibited from raking clams and oysters in the waters of that state, under penalty of forfeiture of the vessel employed, and giving to the court of the county where the seizure of the vessel was made jurisdiction to hear the case. The record recited that the seizure was made in the county where the judgment was rendered

and an exemplification, duly certified, was offered in evidence of the judgment, and of the fact, to-wit, seizure in the county where it was rendered, which gave the court jurisdiction; yet it was held that the fact that the seizure was made there might be inquired into, and it was done and shown that the record was false, and the New Jersey judgment was held a nullity in New York, and the Supreme Court of the United States unanimously so held.

So in Knowles vs. Gaslight and Coke Company, 19th Wallace, 59, it was held that " in an action on a judgment rendered in another state, the defendant, notwithstanding the record shows a return of the sheriff, that he was personally served with process, may show the contrary, namely, that he was not served, and that the court never acquired jurisdiction of his person;" and the court there reviewed, affirmed and applied the case of Thompson vs. Whitman, supra.

These are decisions of the Supreme Court of the United States on a question springing out of the constitution and laws thereof regulating the interstate force of judgments in this country, and of course they are the highest authority upon that subject.

See also Kingsbury vs. Yniestra, adm'r, 59 Ala., 320, where these decisions of the Supreme Court of the United States are recognized, adopted and applied as the law there. Prior to these decisions in 18th and 19th Wallace, there was some conflict upon the point of thus assailing a judgment of another state which recited in the record the jurisdictional facts, but these adjudications, it is believed, must settle the question. See, too, Bissell vs. Briggs, 9 Mass., 461, and Wright vs. Andrews, 130 Mass., 149.

It will be seen from these authorities that want of jurisdiction, either of the subject-matter or of the person, vitiates and annuls the judgment. To show jurisdiction of the subject-matter in the case at bar in the Alabama court, it was necessary to prove the domicile last recognized by the testatrix, and when shown to the satisfac-

tion of that court and attested by the record of the sister state judgment that such was her domicile, it is clear from the authorities cited that such jurisdictional conclusion is only *prima facie*, and is not conclusive evidence of such jurisdictional fact, but may be contradicted by proof to the contrary in the court of the other state wherein it is sought to be enforced or made operative. The facts here show that this issue of jurisdiction, and none other, was made and tried in the Alabama court between the executor and the heirs—one of the heirs living where the executor did, in Montgomery, Alabama, but the other two in Columbus, Mississippi.

That the jurisdiction of a sister state court may be inquired into by the court of another state, when the judgment is put in evidence there, is also laid down clearly in Story's Conflict of Laws, section 609. The language is: " But this " (meaning the faith and credit to which the judgments of sister states are entitled by the constitution and laws of the United States) "does not prevent an inquiry into the jurisdiction of the court in which the original judgment was rendered to pronounce the judgment, nor an inquiry into the right of the state to exercise authority over the parties, or the subject-matter, nor an inquiry whether the judgment is founded in and impeachable for a manifest fraud."

Yet the court below rejected all evidence going to show by the letters of the testatrix to relatives, and in conversations and otherwise, that her domicile was in Columbus, Muscogee county, Georgia; that if it had been in Montgomery, Alabama, at any time, it was changed by her; that she had been in Georgia many months, and had determined upon changing and had changed her residence, and had made Columbus, Georgia, her home, thereby making that place her *last* domicile and the *venue* for probate of her will, if she had made a valid one, or of granting letters of administration if intestate, and thereby showing conclusively that the probate court of Montgomery county,

Alabama; had no jurisdiction to admit the will to probate or to grant letters of any sort.

In my judgment, the refusal to hear such evidence is error, because, in my judgment, under the authorities read, the Alabama probate judgment was not conclusive on the Georgia administrator, but the judgment was void, if Montgomery was not, but Columbus was, Mrs. Merrill's last domicile, and that was open to inquiry. Our own reports abound with the doctrine, 5 *Ga.*, 274, 497; 48 *Ib.*, 50; 31 *Ib.*, 34, which was upon an Alabama judgment.

3. But it may be said that, inasmuch as the heirs at law, though resident in Mississippi, appeared and pleaded to the jurisdictional fact, to-wit, to the domicile of decedent, and the Alabama court decided that point against them, they were concluded, and through them, by some sort of privity, Thomas, the administrator, was also concluded upon the jurisdictional point.

In my judgment, where only a plea to the jurisdiction is made the issue, the better logic and law is that the decision of that foreign court on that sole issue does not bind even the heirs at law from another state, who appeared for that purpose only. The jurisdictional fact determined against them is not upon personal service, or notice, or jurisdiction of the person, but it is upon an issue denying the court's jurisdiction of the case at all, *ex parte*, or between any parties or persons whatever. Even if it had been a plea in respect to personal service, or service by publication, which was filed, denying the fact of such service, and appearance was made by counsel solely on the jurisdictional issue made on that plea, I do not see how such appearance solely to fight the jurisdiction waives and acquiesces in the jurisdiction. Appearance and pleading to the merits would waive jurisdiction and conclude the party so submitting to try the merits before a domestic court, and possibly, too, before the court of a sister state. Code of Georgia, §3460. But I cannot see clearly how, when a Mississippian appears in Alabama to resist the jurisdiction

of its court and thereby protect his property rights, he thereby waives his objection to the jurisdiction and acquiesces in it. See Bissell *vs.* Briggs, *supra ;* Wright *vs.* Andrews, *supra,* and Wright *vs.* Boynton, 37 N. H., 19.

But be that as it may, surely one who put in no plea at all, who was never served at all, personally or by publication, cannot be concluded by the judgment in another state. Therefore Thomas is not bound by it as a party, nor is he as privy. He represents creditors as well as the heirs who pleaded to the jurisdiction; and proof of creditors of Mrs. Merrill in Georgia was offered and rejected. The heirs do not represent him, nor can they bind him by any action of theirs to the exclusion of the rights of creditors of himself or other creditors; and this point has been settled by this court, that there is no privity between the heirs and the administrator, for the reason that he represents creditors as well as heirs. *Gray vs. Conyers, administrator,* 70th *Ga.,* 349, 355. There this court held that " no representation of the heirs at law, *in judicio* or otherwise, would bind the administrator *de bonis non,* for the simple reason that he is no party to the proceeding, nor is he privy to it. He represents creditors as well as heirs. Are the creditors concluded by admissions of the heirs at law? No more is their representative." To the same effect the law is laid down in Bigelow on Estoppel, 3d ed., p. 98, 99, *et seq.,* and numerous cases are cited; and so in Freeman on Judgments, §162–3, *et seq.,* and cases cited.

There were creditors in Georgia against this decedent. Proof of the fact was offered but rejected. So that the court below held, and the judgment of my colleagues affirms the ruling, that Thomas, though neither party nor privy to the Alabama procedure, never served, never notified, by publication or otherwise, never having been named as a party, or considered a party, or attempted to be made a party, never appearing even to dispute the Alabama jurisdiction, is absolutely concluded by the judg-

·ment in Alabama, and would not be permitted to prove ·that Mrs. Merrill's last chosen, fixed, permanent domicile ·was in Columbus, Georgia; that, even if she had ever made ·Montgomery her domicile, she had changed it, and that ·Columbus was her home and domicile where she died, and ·intended to live the remainder of her life had she not died, ·and had so said and written; and this, though there were creditors in Georgia. It cannot be law, if the authorities ·cited in this opinion are law. A court in Alabama, having ·jurisdiction neither of the case nor of the person, renders ·a judgment, and upon its production to revoke and annul ·a prior Georgia judgment, proof to show that the Georgia ·judgment is right on the jurisdictional issue, and the Ala- ·bama judgment wrong, is rejected, and the Georgia judg- ·ment is vacated and the other upheld by a Georgia court. ·I cannot assent to it.

· The fact that Mrs. Merrill died in Columbus, Muscogee ·county, Georgia, is itself presumptive evidence of her dom- ·icile in that place, and the fact of her death there appears ·of record and is undisputed. Grier *vs.* O'Daniel, 1 Am. ·Lead. Cases, 879; Bruce *vs.* Bruce, 2 Bosanquet & Pul- ·ler, 230, note; Bempde *vs.* Johnstone, 3 Vesey, 200; Lowry ·*vs.* Bradley, 45 Am. Decisions, 172; Ennis *vs.* Smith, 14 Howard U. S., 422.

· So that, superadded to the presumption of law arising ·from her residence at death, is the conclusive proof, offered ·but rejected, of her statements and her letters that such ·was her permanent residence and last chosen domicile, ·which fixes the domicile beyond all question—the *last* ·domicile, which *alone* gives the jurisdiction of probate and ·letters testamentary.

· If it be said that there was property of decedent in ·Montgomery county, Alabama, or elsewhere in Alabama, ·it is replied that the issue was made and proof offered that ·there was none anywhere in Alabama. The sole ground ·on which it is alleged that there was any property in that ·State is the principle that the domicile, the true domicile,

draws to it all the personalty for probate or administration and distribution; but the very question I argue, and wherein I differ from my esteemed colleagues and the respected judge below, is that Montgomery is not the true domicile, but Columbus is; and that Thomas had the clear legal right to make proof of that fact, notwithstanding the adjudication and recital in the record of it that Montgomery was the true domicile.

Whether the heirs, resident in Mississippi, were concluded or not by appearing in Montgomery, Alabama, by counsel, and trying that issue of jurisdiction in that court, certainly this Georgia administrator was not, because he was neither party nor privy, representing creditors as well as heirs by the letters of administration which made him trustee for one as well as the other class of *cestuis que trust.* It would be strange indeed if one class of *cestuis que trust* could bind the representatives of the common trust by their individual conduct to abandon the trust undertaken for the other, and the *antagmistic* class of *cestuis que trust.* Their assent to his being the administrator is an assent that he administer in the interest of creditors as well as of themselves, and knowing law, they knew creditors were preferred. How, then, can the administrator be in privity with them against creditors?

Even domestic judgments in Georgia only bind parties and privies as elsewhere, and while parties may bind themselves by waiver, such waiver cannot affect third persons. Code, §3460, and references in note. Much less can such a judgment bind a citizen of another state unless he is served in Georgia, or voluntarily submits to the jurisdiction. Service by publication would not suffice. *Adams vs. Lamar*, 8 *Ga.*, 83. To come in and object to jurisdiction of subject-matter, is not waiver of it or consent to it. It is appearance to fight jurisdiction, to deny it, and not submit or consent to it. It is to keep the court from taking jurisdiction, and not to acquiesce in it; and if it were consent to jurisdiction of a thing—a subject-mat-

ter—without the jurisdiction of the court, it is difficult to see how even consent could give jurisdiction to bind any, body—but certainly not third persons. *Bostwick vs. Perkins*, 4 *Ga.*, 47 ; *Raney vs. McRae*, 14 *Ga.*, 589; also, 56 *Ga.*, 495; 59 *Ga.*, 811; 53 *Ga.*, 497.

The probate of this will is as void by the courts of Alabama for want of jurisdiction as it would have been if granted by the superior courts of Georgia, and nobody on earth could give our superior courts jurisdiction of probate of a will. *Ponce vs. Underwood*, 55 *Ga.*, 601.

That it is the *last* domicile that fixes jurisdiction of probate of wills, see Wharton's Conflict of Laws, §585; Story's Conflict, §479, G, and the books on the subject *passim*.

4. But suppose I am in error in all the foregoing, then the great question arises whether the Georgia court will set aside its own judgment on the point of domicile and jurisdiction at the instance of the judgment of a sister state of later date.

If the true law be that the Georgia grant of letters to one who represents creditors must yield to the Alabama grant on the point of jurisdiction by domicile; if it be the law that jurisdiction recited in the record of another judgment in another State concludes Thomas, representing creditors, and no party to that case, why is it not the law that the judgment fixing the domicile and jurisdiction in Georgia will not conclude Morrisett, though not a party to the Georgia case? Surely Georgia will not be kinder to Alabama than to herself. Surely comity, or any other principle of inter-state law, will not require her to apply a rule to her own courts which she does not to the courts of her sister. Here are two judgments on domicile and jurisdiction—one in Alabama and the other in Georgia. Both recite that the point of domicile and jurisdiction was settled when the grant of letters was made. The Georgia court adjudicated that the court of ordinary of Muscogee county had the jurisdiction, because the deceased died there, and lived there as her domicile, and had goods and

chattels there; and the Alabama court adjudicated that the probate court of Montgomery, in that state, had jurisdiction, by her domicile and *bona notabilia* being there. The question is, if the judgment in each binds persons who are not parties, which shall yield? Surely it must be that the younger shall yield to the older judgment on the jurisdictional point; and if so, the jurisdiction is in Georgia, because her judgment is the older, and therefore the better.

It must be borne in mind, that if the domicile was in Georgia, probate of the will must be in Georgia; and if probate of it must be in Georgia and cannot be in another state, then the Alabama court having no jurisdiction, the probate of the will there is void. Therefore, if the domicile is fixed by a judgment that passed on the point of jurisdiction by the domicile as against an unserved and non-appearing person, it was fixed against Morrisett by the judgment in Georgia before it was considered and passed upon by the Alabama court, and Morrisett cannot review or inquire into it at all, if the law be that the judgment concludes an unserved third person. It follows that, if the suit had been in Alabama on the Georgia judgment, Morrisett would be estopped on the question of jurisdiction, and could not inquire into it or open it for proof at all; yet it is held that he can sue in Georgia and vacate here a judgment, that, according to the views of law entertained by the court below and affirmed here, he could not open his mouth to resist in Alabama;—a Georgia court will vacate, at his suit, a judgment which his court at home will not permit him to assail, but will conclude him by.

Let it be understood that this is no case of concurrent jurisdiction, and that the Alabama court got it by the executor, begun by filing the will in the court there before the administrator moved here for letters of administration. The point is, which had domicile and thereby jurisdiction? Both courts could not, for the domicile could not be in two places in different states at the same time. If domicile

was in Georgia, the Alabama court could not prove the will, if it had been filed the day the decedent died, and the probate is null and void.

The effect of this judgment of this court is to set aside a valid judgment because it conflicts with a void one of later date. It pushes comity to an extremity, in my judgment and within my knowledge, never reached before or contemplated by any court.

5. But further yet this comity proceeds in this very remarkable proceeding. The judgment of the probate court of Alabama, which is thus invested with omnipotent legal power here, sets up a paper as a will which is contrary to the statute law of Georgia and to her policy in respect to property within her borders. A judgment, therefore, without jurisdiction in a sister state, which sets up a paper that, by the laws of Georgia, cannot be enforced as to all or any of the bequests in it, except funeral expenses and a monumental stone and one hundred dollars to one grandchild, is ruled to be powerful enough to overrule, vacate and annul a solemn judgment of the court of ordinary in this state—a judgment which shows on its face jurisdictional power in the court rendering it.

The statute of this state is as follows: "No person leaving a wife or child, or descendants of child, shall by will devise more than one-third of his estate to any charitable, religious, educational or civil institution to the exclusion of such wife or child; and in all cases, the will containing such devise shall be executed at least ninety days before the death of the testator, or such devise shall be void." Code, §2419.

In the case of *Reynolds et al., caveators, vs. Bristow & Kent*, 37 *Ga.*, 283, on a caveat to a will upon the ground that one clause thereof conveyed more than one-third of decedent's property, and the will was executed less than ninety days before death, it was held that the will be admitted to probate notwithstanding that clause, because the testatrix left no child or descendants of a child, though

the will was executed less than ninety days before the death of the testatrix; but it was also clearly held in that case that, had she left children or descendants of children, it would have been otherwise. After showing that generally a devise for charitable uses was lawful in Georgia, by virtue of the Code, section 2468, Chief Justice Warner, in respect to the restrictions upon the general power in §2468 contained in §2419, *supra,* says, " What is the special enumerated class of cases to which this restriction is applicable? To that class of cases only in which the testator leaves a wife or child or descendants of a child. In this particular class of cases the testator is restricted. He cannot, when he leaves a wife or child, devise more than one-third of his estate to charitable uses, and in all cases of that description, whether he attempts to devise as much as one-third of his estate to charitable uses, or a less portion of his estate for that purpose, the will containing such devise must be executed at least ninety days before the death of the testator, or such devise will be void, and the wife or child or descendants of such child, as the case may be, will inherit the estate." Again he says, " There is no restriction imposed upon him by law as to the right to devise his property to charitable uses, when there is no wife or child or descendants thereof; but, on the contrary, it is lawful for him to do so." And again, " In all cases, however, when the testator has a wife, or child, or descendants of a child, and desires to bequeath or devise one-third of his property, or a less portion thereof to charitable uses, he must execute his will at least ninety days before his death, or such bequest or devise will be void." All of which can mean nothing more or less than this, that if a testator desires to give, having children, one-third or less than a third of his estate, he must make the will ninety days before death, or he cannot give to charitable uses that much, even, of his estate; but in no event, no matter when he makes the will, a year or ten years before death, in no case shall he bequeath more than one-third of his estate, if he leave children or wife.

It follows conclusively, that the deceased in the case at bar, having three daughters living when she died, and of course when the will and codicil were executed, could not by will give to charitable uses more than one-third of her property; and if she did, such bequest or devise would be void, and the heirs, to-wit, the three daughters, would inherit the money or property so bequeathed or devised.

It follows as clearly that had the will been offered for probate in this state, this bequest being void, would not have been admitted to probate, but that, in the language of Judge Warner in *Reynolds et al. vs. Bristow & Kent, supra,* " the wife or child, or descendants of child, as the case may be," (here the three daughters) " will inherit the estate." If they inherit it, of course it cannot—that part of it—go to probate; but they will take by descent, and not by purchase.

I am aware that in syllabus nine in the head-note of *Wetter, guardian, vs. Habersham et al., executors,* there is a dictum to the effect that questions for construction " and the fate of charitable or other particular bequests," would be left (the word used being " leaving," at the beginning of the paragraph) " for action of the parties or future direction in the proper court, as the case may require. " But nothing in that case makes any question like the point here. Not a single ground of error alludes to anything like the point in the case at bar. No allusion is made to anything like this case, either in the opinion of the court or the report of facts; but it appears merely a sort of direction or suggestion that, as the grounds of caveat had been adverse to the caveators, and rightly so, matters of construction or particular bequests—some of them charitable—would not be passed upon then by this court. And this interpretation of the meaning of this head-note reconciles it with *Drane, executor, vs. Beall, caveator,* in 21st *Ga.,* 21, where this court held that certain clear claims of the will manumitting slaves could not go to probate,

*60 *Ga.,* 194.

while it declined to construe other intricate clauses thereof on points between caveator and executor, leaving the latter to courts of equity, as well as with *Reynolds et al. vs. Bristow & Kent, supra*, which last case this head-note in terms affirms.

In the case at bar, every dollar of the property of deceased, except one hundred dollars to one person, not an heir, and enough money for funeral expenses and a monumental stone, goes by the will to charities, and the daughters are absolutely ignored and disinherited. The will is, in the teeth of the Georgia statute, *supra*, and the construction of it, in the 37th *Ga.*, by a unanimous bench of this court. Shall a Georgia court revoke and annul a judgment of the court of ordinary in Georgia, granting administration, which carries the property in Georgia to the heirs, where Georgia law and Georgia policy direct it to go, and set up over it a judgment of an Alabama court which establishes as a will a paper which could not have the slightest validity, and would not be worth the paper on which it was written in Georgia, and which disposes of property in Georgia to charities which she prohibits?

Shall the Georgia court set up indirectly such a will, thus void, except funeral expenses and a one hundred dollar legacy, for the sake of such trifling sums, when the whole bulk of the estate goes against her laws and her policy? Will she do indirectly what she would not do directly? Will she so act when the indirect action overruns and annuls the judgment of her own court which lay directly in the path of the Alabama judgment; and was placed in that path before that judgment was born?

Of course everybody will say, if the Alabama court had no jurisdiction, that Georgia would do nothing of the kind; but should she, conceding jurisdiction in that Alabama court, violate her own law and overthrow her own policy in respect to property within her limits?

The principle, on which the view antagonistic to that I take of the case rests, is that, it being settled that the

domicile was in Montgomery county, Alabama, that domicile draws *bona notabilia* from all other places in Alabama or other states for administration and distribution, or for probate, as the case may be; and that, the residence of Mrs. Merrill being there, to-wit, in Montgomery, Alabama, all her personalty is in contemplation of law there also; and thus that the will, if good there at the domicile of the testatrix, will prevail and be enforced on personalty everywhere.

This rule is much relaxed in stringency in later years, and yields more and more annnally to the pressure which the increasing value of movable over immovable property continuously weighs upon the judgment of international jurists, and hence upon legal science. For centuries among all civilized nations immovable property was governed by the law of the *situs*, no matter in what state the will was made and probated; but generally movable or personal property followed the person, and was controlled by the will made in the last domicile. Wharton's Conflict of Laws, §§592-3-4-5, 273-4-5, a, b, c, d, e, f, and references.

But, as said above, the above rule, as to personal or movable effects and goods, is being constantly restricted, and exceptions to its generality have increased and are increasing daily. Wharton, §§297, 490, 570, 571, and etc., references.

Among the exceptions which put personalty on the same footing as realty is the policy or prohibitory statute law of the state in which the personal property is situated or located at the time of the will's execution in the foreign states or (in our union of states) the sister state's territory. In such a case the law of the *situs* of the personal estate rules the succession to be by inheritance, if no will, or if the will be against the policy of the state of the *situs*, or of the statute law thereof. Wharton, §§573, 571, 576, 595, 598; Story's Conflict of Laws, §§326, 472, 472a 473b.

A case directly in point arose in the state of Mississippi,

where a will executed in Virginia and valid there, was not enforced in Mississippi, because the law of Mississippi prohibited it. Mahorner *vs.* Hooe, 9 Smedes & Marshall, 247. By the will made by one whose domicile was in Virginia, certain slaves in Mississippi were emancipated and directed to be sent to Liberia, which the Virginia law permitted, but the Mississippi law prohibited it; and the court held, in an elaborate opinion, that, the *lex situs* being prohibitory, prevailed. And Judge Story cites the case approvingly, and says in §472, after declaring that generally the will of movable property will be valid everywhere, if valid where made, " But the discussion in which we are engaged does not respect the effect of any local prohibitory laws over movable property within the particular territory, but the general principles which regulate the disposition of it when no such prohibitory laws exist."

So in Harper *vs.* Stanbrough, 2 La. An. R., 377, and Harper *vs.* Lee, *Id.*, 382, the same principle was applied to a bequest in a Mississippi will, which was prohibited in Louisiana, though valid in Mississippi. The case turned, in the Louisiana court, upon testamentary substitutions, which, though legal in Mississippi, were prohibited in Louisiana. The property was personal, movable, slaves, which by the will would have gone to one person on a contingency, which happened by the doctrine of substitution, but was decreed to belong to another, because the law of Louisiana prohibited the substitution on the contingency.

It is submitted that the principle in the case at bar is identical. The law of Georgia prohibits these bequests to charitable uses to the exclusion of the children of the testatrix, and the Georgia court should act as did the courts of Mississippi and Louisiana, and enforce its prohibitory law, declaratory of its policy over all property within its limits.

Some of the references above to paragraphs in Story and Wharton are on the interstate law of contracts; but

none of those referred to are inapplicable to cases of wills and distribution of the personalty of interstates, and the general subject of successions, as will be seen by examining all that are cited, with the context.

Paragraph 598 of Wharton's Conflict of Laws seems to remove all doubt of the law in respect to the want of power of the testator to disinherit heirs at law where the *lex situs* of the personalty forbids such disinheritance beyond a certain part of the estate. The author states the law thus: "From the rule that, as to personalty, the law of the testator's last domicile binds, those cases are to be excepted where aid is asked from a court to enforce a provision which, by the law binding on such court is forbidden by rules based on distinctive public policy. Thus provisions for disinheritance will be restricted in those countries where only a restricted disinheritance is permitted; and the same limitation applies to provisions creating trusts and entails, and endowing ecclesiastical corporations in mortmain. A court, in giving effect to such provisions, will be governed by the law of the land. Thus laws prohibiting perpetual entail and perpetual accumulations, remainders of personalty and substitutions, will be enforced by the state in which they exist, although no such laws obtained in the place of the testator's domicile."

Therefore, when the Georgia law forbids and prohibits the disinheritance of children by the testatrix beyond one-third of the estate, in the interest of charitable uses, and the provision is made in the will that the entire estate, except a trifle, shall go to a trustee for such uses, to the disinheritance of the children, who are her heirs, of the entire estate—of any interest in it whatever, the Georgia court, "in giving effect to such provisions, will be governed by the law of the land"—that is, the law of the state of Georgia, and will set such a will aside and give the property to the daughters; and last of all will it for a moment consider such a motion as this at bar, to-wit, to set aside a judgment giving it in effect to the heirs—the children of

testatrix—where her distinctive policy directs its going, and set up in lieu of its judgment one of Alabama, giving validity to a will which contains provisions in the teeth of Georgia's distinctive policy.

It will be observed "that aid is asked," in the case at bar, "of the" (Georgia) "court to enforce (this) provision, which, by the law binding on such court, is forbidden by rules based on distinctive public policy," because it is asked to move out of the way of these bequests for charities the letters of administration which the Georgia court had granted, and the effect of which was to carry the property so illegally bequeathed to the rightful recipients of it in Georgia, to-wit, these three heirs and children of the testatrix. It moves out of the way of the executor trustee this judgment of administration, and enables the said trustee to proceed against the property thus taken out of the hands of the administrator.

6. But this record nowhere discloses what the property of Mrs. Merrill in Georgia was at her death. Whether realty, or liens thereon, or personalty, is unknown to this court, as it was to the court below. An effort was made by Thomas to prove what it was, of what character, and of what value; but the proof was rejected, just as that concerning creditors was, because the court below held it immaterial, for the reason that everything was concluded by the Alabama probate judgment, and nothing touching heirs or creditors or property in Georgia was allowed to go in evidence, and in the charge to the jury, even the question whether Thomas had any sort of knowledge of the Alabama proceeding was held immaterial, the judgment concluding him in any event.

It was vastly important to know the character of the property in Georgia; for, if real estate, it could not be touched by this will.

It is exceedingly doubtful if a lien on realty could be touched by it. My brother, who delivered the opinion of the court, assumes that there is a chose in action secured

by a mortgage on land in Georgia; but I fail to find the information in bill of exceptions or transcript of the record. It is true that the will says that her property consists of money loaned secured by mortgages, but whether on real estate or personalty, or where the property mortgaged lies. or the kind of mortgage, nowhere appears. In my judgment, there was clear error in withholding from the jury evidence of the property in Georgia and the creditors therein, because the character of the property was important on the issue of the validity of the bequests and her capacity to make them in respect to Georgia property, it being undoubtedly invalid and void, if real estate, and very questionable, if any sort of thing attached to realty, or a charge or lien of any sort thereon.

See Wharton, §286, where the author says, "Immovables, so far as concerns the applicability of the rule which prescribes the exclusive authoritativeness of the *lex rei sitæ* include not merely the land itself, but all dismemberments of the property in land, and the right to their enjoyment, as servitudes, rent charges, the property in the surface as severed from that of the subsoil, or *vice versa*, future estates, or particular ones limited in duration, rights of mortgage, pledge or lien, the equitable ownership as distinguished from the legal, or *vice versa*, and if there be any other legal right in any way falling short of the entire dominion of the soil."

So Judge Story, in §447 of his Conflict of Laws, says: "Fourthly, in relation to the subject-matter, or what are to be deemed immovables. Here, as we have already seen, not only lands and houses, but servitudes and easements, and other charges on lands, as mortgages and rents, and trust estates, are deemed to be, in the sense of law, immovables, and governed by the *lex rei sitæ*." See also §§382, 383, in the same book, referred to above in the words, "as we have already seen."

I know generally in Georgia the mortgage passes no title to lands; yet landed securities in Georgia, made in a

particular way by statute, which were once held to be equitable mortgages, do pass title now; and the passing the title in such securities, whether in accordance with that statute or not, wherever intended by the instrument to pass title, by many decisions of this court, do have that effect and pass title. Code, §1969; 63 *Ga.*, 159, 160; 54 *Id.*, 45; 55 *Id.*, 412; 59 *Id.*, 507, etc.

So that if my brother's conjecture or information be right, that there is a mortgage on land belonging to decedent, it was important to see what sort it was.

If there were Georgia creditors of Mrs. Merrill, the court was wrong to send them out of Georgia, which was virtually done, with property subject in the state. The principle would send them to California as well as to Alabama, if the will had been proved there instead of in Alabama; and debts, unless heavy, would not have been worth collecting.

That a court will not send creditors out of its jurisdiction, if it has effects subject to their claims within the state, is ruled in this state in *Callaway, administrator, vs. Jones & Quattlebum*, 19 *Ga.*, 277.

For the reasons above stated, I think that the court below erred in not dismissing the motion to vacate the judgment of the court of ordinary of the county of Muscogee for want of legal authority, by our statute, in the executor to sue, –the exemplification from Alabama not containing a copy of the letters testamentary, and no evidence appearing of the filing thereof with the clerk or the ordinary. I think it erred in holding and ruling that the judgment in the court of probate concluded the Georgia administrator, he being neither party nor privy to the cause tried in Alabama; and in ruling out, as a sequence of that ruling, all evidence of property in Georgia, in Muscogee county, of every description, and all proof of the residence and domicile in Columbus, Georgia, of the decedent. I think it erred in ruling out all testimony in respect to creditors of deceased in Georgia or elsewhere, they being interested in

the effects in the hands of the administrator, and those in Georgia having rights in those effects in the hands of the administrator, to be adjusted before such effects could be legally taken from him and sent beyond the jurisdiction. I think it erred in holding that the jurisdictional judgment, that the domicile was in Alabama, after the Georgia judgment, that the domicile was in this state, had been rendered, superseded the Georgia older judgment that had fixed jurisdiction here, thus overruling a senior Georgia judgment of jurisdiction in her court by a junior Alabama judgment of jurisdiction in hers. I think it erred in vacating and annulling a grant of letters of administration in Georgia because of a probate of a will in Alabama, which operated to pass title by the will to Georgia property for uses and trusts contrary to Georgia's policy and her prohibitory law, the effect of which is to assist the trustee for such uses and trusts in recovering the Georgia property from the children and heirs of the decedent in the teeth of that policy and statutory prohibition. I think it erred in ruling out proof, as well of the character as the amount of the property in Georgia, it being important to determine what law, whether that of Georgia or of Alabama, would govern the validity of the will as to those trusts and uses.

On the whole, I regard the conclusion reached contrary to law and justice.

A woman dying in Georgia, making the last part of the will, her codicil, in Georgia, gives to Aintab College, in the city of Aintab, Turkey, the sum of five hundred dollars; to the American Tract Society, five hundred dollars; to the American Board of Missions, one thousand dollars; to Morrisett, in trust for certain children's education, one thousand dollars, conditioned that, if they die before sixteen years old, it shall go to a charitable institution to be selected by him; to Martha Jones, one hundred dollars, then enough for her burial and monument, and all the residue of her estate, if any left, for the colored Sabbath-

school of the Presbyterian Church of Columbus, Missis-
sippi.

Thus it is seen that, by her will, executed partly in Ala-
bama and partly in Georgia, with her residence in Geor-
gia when she died, with her effects all in Georgia with her
when she died, for she says in the will that all she owns is
money loaned on mortgage securities, and these debts cer-
tainly traveled with her, with proof offered, but rejected,
that she said and wrote that she had made Columbus, Geor-
gia, her home, thus fixing the last domicile there; by this
will so executed, and she so domiciled, with her own latest
utterances and letters to relatives offered to prove this
domicile, she gives every cent she has (except enough to
bury her and put a stone on her grave and a hundred dol-
lars to Martha Jones) to charities, and excludes her own
daughters and heirs from every dollar.

With a little property, not exceeding four or five thous-
and dollars (for her will makes it doubtful that anything
will be left after expenses of burial and legacies named),
she gives away all she has to the education of people in
Turkey, and to missions, tracts, colored Sunday-schools
and such other charities as Morrisett may select, to the
entire exclusion of her own daughters, who are not named
in the will, nor are they given, directly or indirectly, imme-
diately or in remainder or contingently, one single cent
by their mother in her last will and testament. Such a
will in Georgia could be admitted to probate, so far as the
burial and monumental provisions and the hundred dollar
legacy are concerned, and possibly, barely possibly, as to
the trust for education of two children, coupled with the
contingent trust for charities that Morrisett should name.
If the last clause alluded to should, by Georgia law, get
to probate, the contingent part would certainly fail, and
if the children named died before sixteen, the three daugh-
ters would inherit; if, indeed, the bad company of the
charity—contingent—*addendum* did not vitiate the entire
provision, the trust for grandchildren, as well a contingent
charities.

So that, if the will had been offered for probate in the court of Muscogee county, Georgia, the extent to which it would, or could have been admitted, would have been but these items; and as to all the rest, it would have been rejected.

The result, therefore, of this judgment is to sanctify all of it, and that by a Georgia court, over a valid subsisting judgment of the court of ordinary of Muscogee county, granting letters, good as to the great bulk of the estate, to which the heirs are entitled by the laws of this state, which prohibit, as her distinctive policy, their disinheritance, being children, beyond one-third of the mother's property in Georgia.

If left in no better condition than the vast multitude of southern people since the termination of the civil war, these children, one of whom at least the will shows to be a widow, are very much in need of the pittance that the law of Georgia gives them. Charity begins at home; and a sober judgment will not strain law to send money to Turkey on an educational mission, or place it in the hands of even a tract society, or a board of general missions, or Sunday-schools for negroes, or other unselected charities, when children of one's womb, who should be nearest the mother's heart, are probably left in straitened circumstances. Nor does it matter, either at law or to southern sympathy for common suffering, that the daughters live in Mississippi and not in Georgia. The common United States constitution gives them the same rights in Georgia as her own citizens have, and the common cause and common sorrow and suffering by it entitle them to the comity of a sister's love.

This is a Georgia will. The codicil, executed in Georgia, is the last utterance of the wish of the testatrix put on paper. She had other wishes, according to her intimations to Thomas, but her want of breath left them unsaid according to law. The utterance in Georgia, at Hamilton, Harris county, is all of the will executed according to Georgia

w 76-27

law, as the part made in Alabama has but two witnesses, and after her change of domicile, giving Georgia courts jurisdiction, was absolutely worthless without the ratification the codicil gave.

Even in Alabama the codicil, executed here, is essential to make the whole will. The other part is not her will without the alterations made in the codicil, and could not be set up anywhere without that which makes the paper her whole will. The last part of a will is the supreme part; it controls all else, and stands, if all the rest has to fall by its standing. So that this will is a Georgia will. The fact that she sent the codicil to Morrisett, in Montgomery, to be kept with the will, of which it was the essential part, cannot be used to make the will on Alabama paper, nor does the executor's residence there affect the point. It is the place of its execution, not the residence of him who has its custody, that marks the nativity of the will.

Even if it were wholly an Alabama will, the change of domicile to Georgia and the death in Georgia, made the law of Georgia the test of her capacity to dispose of her property.

"By the English common law, as held both in England and the United States, testamentary capacity, as to personalty, is governed by the law of the domicile of the testator at the time of his death," is the law laid down in Wharton's Conflict, §570. The references are to Story, 465; 4 Burge, 577; Phil. iv., p. 627; Redfield, 1, 386; 21 Conn., 582; 3 Bradf. Sur., 379; Davison's Will, 1 Tuck., N. Y., 479; 28 Texas, 503. The author adds, that by the "statutes of England and in most of our states, no change of domicile can avoid or affect a will which was valid by the law of the testator's domicile at the time of its execution;" and in §536 the author cites 24 and 25 Victoria, chap. 107 (Lord Kingsdown's Act) as having altered the rule prevalent before at common law, and adds that "this amendment of the law has been adopted generally in the United States." I am aware of no adoption of it in this state. So that, if

the law before the statute of Victoria, *supra*, be the law of Georgia, unaltered by statutes of this state from the common law, it is this : "Even when a testator, having executed a will according to the forms of his then domicile, abandons such domicile, and acquires a second domicile, in which the will would be invalid for want of proper execution, the law of the latter domicile at common law prevails." §585 of Wharton's Conflict. So also in §592 of the same book, " The last domicile is to be resorted to as giving the law by which the interpretation of a will as to personalty is to be determined,"—references numerous.

So that, if the question were one of construction, instead of want of proper execution or of invalidity of clauses to pass to probate, the conclusion is clearly reached that it is the last domicile, that offered to be proved to have been in Columbus, Georgia, that gives the law by which the paper goes to probate and the construction of it as well.

Whilst assuming nothing approaching infallibility as man or judge, and conscious of many defects in each character, and with high appreciation of the weight of three able judges pressing upon me, my views of the law, the policy of the state, and the equities of the parties, force me to conclude that there should have been a new hearing of this case ; and upon the proof, if exhibited as offered, but rejected, there should have been judgment on the merits for the plaintiff in error, even if the want of evidence by exemplification of the letters testamentary and the filing the same according to law had been supplied on the new trial and given the executor a standing in court.