### 287.   LEE & ANDERSON *v.* LOUISVILLE AND NASHVILLE RAILROAD COMPANY *et al.*

When a summons of garnishment has been served upon the defendant in an action for damages, and when, in compromise of such an action, an agreement is made by the defendant thus garnished to settle the plaintiff's claims for injuries alleged, the proceeds of such agreement or the sum agreed to be paid is subject to garnishment issued in behalf of a creditor of the plaintiff in the suit for damages. While liability on the tort is not garnishable, the amount agreed to be paid in settlement thereof is subject to garnishment. He who disregards a summons of garnishment does so at his peril.

POWELL, J., dissenting. Liabilities for torts are not subject to garnishment until liquidated by judgment or otherwise. The burden is on the

22

plaintiff to show, upon traverse, that funds have come into the garnishee's hands, prior to the service of the summons of garnishment or pending the same, subject to the proceedings. This is not done by showing that the defendant claimed a cause of action for tort against the garnishee, and that without admitting liability the garnishee, after service of summons, bought peace by paying to the defendant a sum of money in cash or in a negotiable instrument which the defendant immediately negotiated to a third person; it not appearing that there was any other agreement liquidating the defendant's demand against the garnishee.

Garnishment, from Newton superior court—Judge Roan. September 27, 1906.

Argued April 29,—Decided July 18, 1907. .

*Rogers & Knox,* for plaintiff.

*Joseph B. & Bryan Cumming, J. M. Pace,* for defendants.

RUSSELL, J. Lee & Anderson held a fi. fa. against J. Tom Wright, obtained in the county court of Newton county. Summons of garnishment, based upon this judgment, was served on certain railroad companies on the 24th of April, 1906, requiring them to answer at the July term, 1906, of Newton county court, what property, money, or effects of the defendant they had at the date of the service of the summons of garnishment; and also what property, money, or effects of the defendant may have come into their hands at any time from the date of said service to the date of the answer; and also what they owed the defendant at the date of the service, and also what they may have become indebted to the defendant at any time between the date of the service of the summons and the answer. At the time of the service of said summons there was pending in the circuit court of the United States for the northern district of Georgia, at Atlanta, a suit for $15,000, for damages from personal injuries alleged to have been sustained on March 4, 1905, in which said J. T. Wright was plaintiff, and the garnishees were defendants. On the 14th day of May, 1906, while the trial of said case was in progress, there was a parley between plaintiff and defendants therein, the outcome of which was that the garnishees agreed to pay J. T. Wright the sum of $1,750, in full settlement and release of any and all claims whatsoever growing out of said injury. On the same day the garnishees gave to Wright a sight draft for $1,750, in full settlement of any and all claims

and damages incident to the alleged personal injuries, which draft was paid by the garnishees on the 15th day of May, 1906, in full. The garnishees thus ignored the garnishment of plaintiffs in fi. fa., and paid the whole amount of said $1,750 to said Wright. The garnishees filed their answer at the July term, 1906, of the county court of Newton county, denying that they were indebted to J. T. Wright at the time of the service of the summons of garnishment, or that they had become indebted to him at any time since the service, in any sum whatever which was subject to the process of garnishment, or that they owed him any debt; but the answer stated the facts substantially as herein set out. The answer was traversed by the plaintiffs in fi. fa., and the case was appealed by consent to the superior court. On the trial the plaintiffs tendered in evidence their fi. fa. against Wright, obtained at the October term, 1903, of Newton county court, for the principal sum of $291.34; also, certified copies of the suit in the United States court and of the judgment of that court withdrawing the case from the jury and dismissing it; also, the paid draft given by the garnishees to said Wright for $1,750, in full settlement of his claim for damages from personal injuries. The court rendered judgment against the traverse and in favor of the garnishees, and the plaintiffs excepted, insisting that the garnishees acted in their own wrong in ignoring the garnishment and paying the defendant the full amount of money, as the summons of garnishment operated as a lien from the time of service up to the time of making the answer, and that by no act of the debtor or the garnishees or both could the lien be defeated.

Two questions are presented. Is the fund, for any reason of law or public policy, exempt from garnishment; or, are the garnishees protected by reason of the fact that the draft outstanding in the hands of other persons might subject them to liability to pay the amount a second time? A claim for tort is not subject-matter of garnishment; and it is insisted that agreements to settle or compromise should not be hampered or thwarted, because it is to the public interest that such cases be settled. The draft in this case was drawn by a railroad company on itself. "An order for money, drawn by a municipal corporation upon its own treasurer, payable upon demand and without condition,

is in effect a promissory note and is 'an unconditional contract in writing' within the meaning of the Civil Code, §4134." *Morgan* v. *Cohutta,* 120 *Ga.* 423, 47 S. E. 971. Then, could a promissory note be garnished? We think the court erred in finding against the traverse. Every facility should be afforded to creditors for the collection of debts, and the processes of courts should not be disregarded and contemned unless the right to ignore them is unquestioned. With the exceptions hereafter mentioned, garnishment reaches everything due at the time of service of garnishment, and everything becoming due by the garnishee to the debtor up to the time of the answer. Having been served with process of garnishment, if there is any time between the service of the summons and the date of his answer when he becomes indebted to the garnishing plaintiff's debtor, no matter what the manner of his payment, he pays at his own peril. The public policy which favors the compromise and settlement of lawsuits is not superior to the public policy in favor of collecting a just debt and requiring that the proper notice be taken of the process of the courts. The question then is, was there any time, after the service of the summons, when the garnishees in this case were indebted to Wright, the defendant in garnishment? If there was any such time, the lien of the garnishment would attach. It is immaterial whether the garnishees were liable to Wright in tort or not; for that liability is not subject to garnishment (see *Holmes* v. *Pope,* 1 *Ga. App.* 338, 58 S. E. 281). The fact that Wright was plaintiff in an action for damages arising from personal injuries to himself is therefore immaterial, unless for some reason or in some way it became the occasion of a contract by which the garnishees became indebted to him. We think the undisputed evidence shows that a debt from the garnishees to Wright was created by the proposition to pay him $1,750, and his acceptance. It was not payment, but it was a promise to pay supported by the consideration that he would dismiss the suit. It was a mutual understanding, creating an obligation on the part of each of the parties and enforceable by either on his compliance with his agreement.

The fact that the garnishees denied liability as to Wright's suit is inconsequential in the case. They bought their peace for the fixed stipulated price which Wright charged for it. The bar-

gain was struck, and they owed him for their purchase until they paid him. The draft was, in effect, a promissory note, but neither the draft nor note is the debt; each is only evidence of a debt which antecedes it. The note would presume the existence of a debt, but a debt does not depend upon the creation of either draft or note. When the parties in the case in the United States court made their bargain, by which the garnishees promised to pay Wright $1,750, they could have paid it in cash as well as by draft. If they could, then the fact that they gave a draft is immaterial in the elucidation of the question as to whether they are subject to garnishment. To say this would be to hold that the length of time required to discharge a debt determines the question as to whether it is such a debt as will be reached by garnishment already of force and served upon the garnishee. If a garnishee's promissory note or negotiable draft is outstanding when the garnishment is sued out, the garnishee is protected, to prevent him from having to pay the debt twice. But where a garnishee, having no obligation to pay outstanding, voluntarily assumes one to the debtor of a garnishing creditor, he can not invoke protection against a debt which he himself has created. The garnishees insist that to hold them subject in this case would be to prevent sales for cash by a debtor where a possible purchaser has been garnished. We do not think this of necessity follows; we are, at least, not called upon to so decide. Whether this is or is not true, when the garnishees gave Wright the draft on themselves, it was to all intents and purposes a promissory note due and payable on demand; and it can not be questioned that the debt thus evidenced, not being for any admitted or established liability in tort, is subject to garnishment. The very learned counsel for the defendants in error insists, that, in accordance with the provisions of the garnishment law applicable to negotiable instruments, the garnishees, from the moment they gave the check or sight draft, were indebted, not to Wright, but to whomsoever was the bona fide holder at the time it was presented for payment. We do not think that a garnishee, required by mandate of the court to answer as to his relation and status, whether as to property in his hands or debt due by him, should be allowed to nullify the process of the court, and at the same time claim its protection against his own act. But whether or not we are

right in this opinion, when the debt is evidenced by a draft drawn by one on himself, the rule relied upon is not applicable.

We have considered the case wholly from the position that there was no property in the hands of the garnishees up to the time of the answer, and that the only question to be considered was whether any debt, at any time prior to the answer, became due by the garnishees to Wright, the defendant in garnishment. We have borne in mind the uniform ruling, that liability for tort is not a debt, and that the debt which arose was independent of any such liability, and that, as insisted by the garnishees (defendants in the action for damages), no such liability in fact existed. But while liability for tort is not a debt, the fact must not be lost sight of that a garnishee is not only required to answer what he owes the defendant, but he is also made responsible to account to the court for any property of the debtor subject to the garnishee's control and disposal. If A, having B's horse in his hands as bailee, answers that after being garnished he exchanged him, by B's order, for a piece of land in Alabama, not subject to the garnishment, would he be discharged? If, then, the garnishees had any property of Wright in their hands, the lien of the garnishment would attach, and they could not change its status or character. And while liability for tort is not subject to garnishment, that a claim arising from a tort is property has been held by the Supreme Court. In *Banks* v. *McCandless,* 119 *Ga.* 798, 47 S. E. 332, it was expressly held that the contingent liability of a tort-feasor is *property* which the debtor can not transfer to the injury of a creditor. If this be true, and if it is based upon any sound reason, can the debtor, with the aid of the garnishing creditor, be permitted to put the property where a creditor can not reach it? If it be property subject to a creditor's demand, as expressly held in 59 and 119 *Ga.,* will not garnishment hold it until the proper tribunal may at least have an opportunity of adjudging whether it is or is not exempt from the process? We think so. The extent of the holding as to liability for tort was that such liability was not a debt subject to garnishment. The reason for this is apparent, because the amount has not been ascertained; for after judgment garnishment is effective to fix a lien on the recovery. Under the ruling in *Westmoreland* v. *Powell,* 59 *Ga.* 258, the term "debtor" is applicable to tort-feasors, and is extended so as to

include "one who owes another for an unascertained damage to person or property," so far as fraudulent conveyances by that debtor are concerned. And following this with the ruling in 119 *Ga.* supra, the court, in our opinion, makes the principle applicable to garnishments by holding that an unascertained claim for damage is property. And we see no conflict in these holdings. A claim for unliquidated damages may be property (its value dependent upon circumstances very great or very small), while it can not be a debt because the amount is unknown. As property the claim of Wright in this case was subject to garnishment; and as a promise of the garnishees to pay a certain sum, whereby a debt was created, it was no less subject. In either event the judgment of the trial judge was erroneous.      *Judgment reversed.*

POWELL, J., dissenting. I will outline my reasons for dissenting in this case. Before the plaintiffs could recover against the garnishees (the railroad companies), it was incumbent upon them to show that the garnishees were indebted to the defendant (Wright) at the time of the service of the summons of garnishment, or became indebted between that date and the time of filing their answer. Proof that, at the time of the service of the summons, an action was pending by Wright against the railroad companies is not proof that the companies were really indebted to him. This would be true even as to an action ex contractu; and it is irrefragably true as to an action for tort. *Gamble* v. *Central R. Co.,* 80 *Ga.* 595, 7 S. E. 315, 12 Am. St. R. 276. If it had been shown that, as a result of either form of action, a final unappealed judgment had been rendered, this would have been sufficient evidence of an indebtedness from and after the rendition of the judgment. In the case at bar no final judgment was ever rendered. Did the railroad companies, then, become indebted between the service of the summons of garnishment and the date of the answer thereto? If the parties merely liquidated, by agreement, an admitted or established tort, the question should be answered in the affirmative. From the record it is clear they did not do this. In the very proposition of settlement the companies denied liability, and merely offered, as a cash transaction, to buy peace. They offered to buy for cash something which was not, at least so far as the proof shows, a liability against them. This they

could do without incurring an indebtedness; for in cash transactions no indebtedness is contemplated by the parties, or by the law. *Bergan* v. *Magnus,* 98 *Ga.* 514, 25 S. E. 570; *Matthewson* v. *Belmont Co.,* 76 *Ga.* 359; *Emery* v. *Atlanta Exchange,* 88 *Ga.* 325, 14 S. E. 556. It was a cash transaction; but it is said that the companies did not pay in cash. They did the same thing; they paid by a negotiable instrument; and, as Lord Mansfield says of such instruments in the case of Miller *v.* Race, 1 Burr. 457, "Now they are not goods, not securities, nor documents for debts, nor are so esteemed; but are treated as money, as cash, in the ordinary course and transaction of business, by the general consent of mankind; which gives them the credit and currency of money to all intents and purposes. They are as much money as guineas themselves are, or any other current coin that is used in common payments as money or cash." Indeed this court and the Supreme Court recognize that an indebtedness by negotiable instrument is not subject to garnishment, unless the garnishing creditor shows that the bill has become past due in the hands of the defendant, or that it is otherwise so impounded that possibility of its negotiation is excluded. Of course if the draft given to Wright was not a negotiable instrument, my whole argument falls. It was in the following form:

"Georgia Railroad.

"$1,750.00                    Atlanta, Ga. May 14, 1906.

"At sight pay to the order of John T. Wright the sum of seventeen hundred and fifty dollars, in full settlement of any and all claims and damages incident to alleged personal injuries sustained at Atlanta, Ga., in the Union Passenger Depot on March 4, 1905.

"To W. S. Morris, Esq., Treasurer, Ga. R. R.   Augusta, Ga.

"Jos. B. Cumming,

Gen. Counsel Ga. R. R."

Endorsed, "John T. Wright." Also, "Pay to the order of any bank or banker. Prior endorsements guaranteed. May 14, 1906. Fourth National Bank of Atlanta, Ga., Chas. J. Ryan, Cashier."

"A bill of exchange may be drawn upon the drawer himself, and is then in effect the promissory note or the accepted bill of the drawer at the holder's election; and this is true in general of a bill or a draft drawn by a principal on his agent, or by an agent

on his principal, or in the principal's business by one agent on another." 7 Cyc. 569. Treated purely as a promissory note, the instrument in question may be properly considered as past due, and therefore not negotiable from the moment of its issue, under the rule stated in the Civil Code, § 3700. Under the same section, if treated (as the holder was entitled to do at his option) as a bill of exchange, it was not due until presented for payment, if presented in a reasonable time. The intention of the parties as derived from the form and nature of the instrument largely controls. It was manifestly not the purpose of the railroad company to give its note payable on demand, but to give a draft made in Atlanta, and not payable until it could be presented in Augusta; and to have it operate and pass as an ordinary bill of exchange. In the case of *Lynch* v. *Goldsmith, 64 Ga. 50*, Judge Bleckley,—and when in Georgia decisions we speak of Bleckley, "We have reached the mountain from which the drift bowlders were detached,"—after deciding as to the applicability of the Civil Code, § 3700, to the instrument then in question, adverts by way of obiter to the proposition that the intention as to the maturity of the instrument should be determined by the purposes it is issued to subserve. In the case at bar the maker of the paper manifestly intended that it should not be payable on immediate demand; the payee likewise so took it, for he immediately negotiated it to the bank. Being a negotiable instrument, the garnishment did not catch the indebtedness thereby represented. I think, therefore, that the trial judge decided the case properly, and dissent from the judgment of this court to the contrary.