GAMBLE *et al.* vs. THE CENTRAL RAILROAD & BANKING COMPANY.

| 80 | 595 |
|----|-----|
| 87 | 389 |
| 80 | 595 |
| 96 | 176 |
| 80 | 595 |
| 107 | 846 |
| 80 | 595 |
| 112 | 145 |

1. A judgment recovered in an action for a tort is not assignable before it comes into being, that is, before it has been rendered or entered up, although a verdict has been returned upon which judgment can be and is afterwards signed. The plaintiff acquires title, not by the verdict, but by the judgment, and until its rendition he has no title to assign; until then his action for the tort is not terminated, but is still pending and in progress.
2. The defendant in an action for a tort is not subject to garnishment till final judgment is recovered. A garnishment issued and served after a first verdict for the plaintiff in the action, which verdict is subsequently set aside and a new trial granted, and answered before a second trial is had, the answer denying any indebtedness, seizes nothing and takes no lien on the final recovery.
3. A note executed in Georgia but payable in Alabama, waiving homestead and exemptions, and specifying a conventional rate of interest after maturity, which rate was not usurious according to the laws of Georgia, is not, after a general judgment has been rendered thereon in this State, open to inquiry, at the debtor's instance, as to whether it was usurious according to the laws of Alabama or not. No exemption right embraced in the waiver, as to property or effects of the debtor found in Georgia, will prevail over the judgment; the note being made since the present constitution was adopted, and being free from usury so far as appears upon its face without going into evidence as to the law of Alabama.
4. A misnomer in the name of a partnership creditor, (such as J. P. Sarrazin & Son for J. P. Sarrizin's Son & Co., or M. C. Kiser & Co. for M. C. and J. F. Kiser & Co.) in the list of creditors furnished to the ordinary, and in addressing notice to the partnership, will not vitiate the exemption proceedings or render them ineffective against such partnership.
5. The presumption is in favor of the local jurisdiction of the ordinary granting an exemption, and in this case there was no evidence to overcome such presumption, nor any whatever in conflict with it.

July 11, 1888.

Judgments. Assignment. Title. Garnishment. Liens. Promissory notes. Interest and usury. Exemptions. Misnomer. Jurisdiction. Before Judge ADAMS. Chatham superior court. June term, 1887.

W. A. Gamble recovered a verdict against the Central Railroad and Banking Company for $7,750, which was set aside by the grant of a new trial November 25, 1884; and this was affirmed by the Supreme Court (74 *Ga* 586).—On September 19 and 27, and October 6, 1884, respectively, J. P. Sarrazin's Son & Co., M. C. and J. F. Kiser & Co., and Beck & Gregg served summonses of garnishment on the railroad company, which were answered December 1, 1884, the answers stating that Gamble claimed damages of the company, but that it denied being indebted to him therefor. On March 5, 1885, Sarrazin's Son & Co., and on March 15, 1887, Kiser & Co., traversed the answers. Gamble's suit against the railroad company was again tried at the March term, 1886, of Talbot superior court, and he recovered a verdict against it for $4,000; and judgment was entered on the following day. After the verdict, but before judgment was entered, Gamble made partial assignments of it in consideration of prior indebtedness to his wife, Kate J. Gamble, and to Z. B. Gamble and two others, his brothers, and to one Baker, subject to the liens of his attorneys for their fees. Other creditors also claimed liens. On April 4, 1887, the railroad company filed its bill against Gamble and all these other parties, praying that certain of them be enjoined from prosecuting their suits at law, and that the several parties might interplead to settle their respective rights. Answers were made, evidence submitted, and on special questions of fact submitted to the jury, it was found as follows:

W. A. Gamble's wife is a *bona fide* creditor of her husband, and the assignment made to her was in good faith. Not so as to Z. B. Gamble, or the other two brothers, or Baker. W. A. Gamble (as he claims in his answer) on April 6, 1887, applied, as head of a family, to the ordinary of Muscogee county for an exemption of personalty under the laws of Georgia, which was granted on April 27, 1887, to the extent of $1,600 of the judgment in his favor; but he was not then a *bona fide* resident of that county and

did not have his domicile there, but took up a residence there merely for the purpose of defrauding his creditors. He was not a citizen of Georgia. He signed the note sued on by Kiser & Co., containing a waiver of homestead, dated July 25, 1878. He was then a resident of Alabama. The judgment of Sarrazin's Son & Co. is the oldest one before the court, is valid and is due. The claim of Kiser & Co. is due and is valid (subject to the decision of the court as to the question of usury made thereon). The notice of the application for homestead mailed by the ordinary was addressed to " J. P. Sarrazin & Son " instead of J. P. Sarrazin's Son & Co., and to " M. C. Kiser & Co." instead of M. C. & J. F. Kiser & Co.

It appeared that, in his answer, W. A. Gamble alleged that he was a citizen of Muscogee county when he applied for the exemption; and he attached thereto the official notice of the ordinary to the railroad company, stating the facts as to the setting apart of the exemption, and requiring it to pay out of the amount of the judgment into the superior court, to be ordered paid to the ordinary for legal investment, the sum of $1,600, out of such sum as should remain after the superior court had ordered such liens as it adjudged superior to the homestead to be provided for.

The chancellor held the answers of the jury as to Gamble's not being a citizen of Georgia, when he applied for the exemption, or a *bona fide* resident of Muscogee county, and as to his securing the homestead to defraud his creditors, etc. were repugnant to the answer as to the fact of the grant of this exemption, as well as to the judgment of the ordinary, behind which the court might not go. But he further held that the findings of the jury, as to the improper designation of the names of Sarrazin's Son & Co. and Kiser & Co. in the notice to creditors, disposed of the exemption claim. Therefore, after providing for numerous claims not contested, he ordered that the claim of Sarrazin's Son & Co. be paid, and the balance of the fund be paid to Kiser & Co. The claims of the assignees of W.

A. Gamble (his wife and Z. B. Gamble among the others) were held to be inoperative. Kate J. Gamble, the wife, thereupon excepted to the refusal of a decree in her favor. Z. B. Gamble moved for a new trial, which was refused, and he excepted. W. A. Gamble also moved for a new trial, on the grounds that the findings of the jury against his claim of homestead and in favor of the garnishing creditors, and the decree of the court thereon, were contrary to law and evidence; and this motion also being overruled, a bill of exceptions was taken. The facts as to the attack on the note to Kiser & Co., the foundation of their judgment for usury, are sufficiently stated in the third head-note.

R. R. RICHARDS and J. A. CRONK, for plaintiffs in error.

HILLYER & BRO., DENMARK & ADAMS and LESTER & RAVENEL, *contra*.

BLECKLEY, Chief Justice.

1. All judgments are assignable. Code, §§2776, 3797. But are they assignable before they are judgments? That is, when they are in merely potential, not actual, existence?

Here the plaintiff, in an action of tort for a personal injury, having obtained a verdict for $4,000 damages, attempted, not for any new consideration, but in payment of pre-existing debts, to assign to his wife an interest in the prospective judgment to the extent of $700, and to his brother a like interest of $300. Upon the following day, judgment on the verdict was entered up and signed, whereby the plaintiff in the action recovered of the defendant therein the whole $4,000. This judgment, which was silent as to any interest of the wife or brother, was conclusive evidence that between the parties thereto the relation of debtor and creditor then existed with respect to the whole sum of $4,000. Indeed, it was the judgment

that created the debt, as a debt strictly. It was by it that the plaintiff acquired his title to the judgment itself, and his specific right to its specific produce. Previously he had no such title absolutely vested, but in lieu thereof the right to prosecute his action to a final termination, and the general right to take its fruits; and these he did not try to part with or assign. For some purposes the judgment, when duly entered up, related back, but relation could not give to the assignments a subject-matter, and thus obviate their invalidity resulting from the want of it. It may safely be concluded that neither the judgment nor any part of it was effectually assigned. No title thereto having yet accrued, none could be communicated or transferred, unless the cause of action was assignable and was in fact assigned, in which case the judgment perhaps might pass by operation of law as a consequence of the previous assignment of the assignable cause of action. *Dugas vs. Mathews,* 9 *Ga.* 510.

There can be no doubt that, until the judgment was actually rendered, the action for the tort was still pending, for save in a pending action no judgment can be rendered. After an action has ceased to be pending, after it has terminated, no judgment that the plaintiff does recover can be entered up; nor, until after final judgment, can either party, as a general rule, have a writ of error, the reason being that prior to that stage the action has not terminated. We think that, in Georgia, whilst an action is pending for a tort, there can be no legal assignment of the cause of action or of the damages to be recovered. Authorities differ somewhat as to whether rights of action for torts are choses in action, but the code, §2243, settles the question affirmatively for us; and in the next section it treats them by implication as non-assignable, for it provides that " all choses in action, arising upon contract, may be assigned so as to vest the title in the assignee." On the principle that the mention of one thing is the exclusion of another, (*expressio unius exclusio alterius,*) choses in action aris-

ing from torts are not assignable in this State, whatever the rule may be elsewhere. If it be said that the code speaks of legal assignments, and means by " title " legal title, this is probably true; but we see not why the same policy, which denies assignability at law to redress for wrongs, should not do it in equity, especially where no new equity is created when the assignment is attempted, and only a pre-existing debt between the parties is involved in the consideration. We are unable to see why equity should aid a creditor who has no judgment to defeat one who has, and thus enable the debtor to make a preference in equity which he could not make with the same resources at law. Without some special equity to found it upon, the equitable right to make preferences is measured by the legal right, and so, too, of the means to be employed or used for the purpose.

As the assignees acquired from the assignor no title to the fund, they have at most a mere equitable claim upon it, in the nature of a lien. The fund is to be administered as his assets, not as theirs in whole or in part; and being legal assets, legal priorities prevail. Code, §3142; *Robinson vs. Bank of Darien*, 18 *Ga.* 65; *Dowell vs. Dickle & Co.*, 55 *Ga.* 177. It follows that the judgment creditors are entitled to be paid in preference to the assignees, and that the ultimate result arrived at below was correct as to these two plaintiffs in error. Being entitled to nothing, they got nothing.

2. With respect to the garnishments, little need be said beyond what appears in the second head-note, inasmuch as the view we have taken of the assignments deprives the garnishments of all materiality as a factor in the litigation. It is a misconception and misapplication of *Walker vs. Zorn*, 56 *Ga.* 35, to treat it as authority for garnishing a tort-feasor before final judgment is rendered against him. It is authority for garnishing a debtor by contract, though the action in aid of which the garnishment issues be *ex delicto*, like the count for mesne profits

in ejectment. In the present case, if the garnishee had delayed answering until after final judgment, though the garnishments were served before, they would have been effective. Code, §§3536(a), (b.) The latter of these sections makes "all debts owing to the defendant" subject to garnishment, but prior to final judgment the damages for a tort are not a "debt" in the strict sense contemplated by the garnishment laws. Nor was it the purpose of *Westmoreland vs. Powell*, 59 *Ga.* 256, to hold that torts would make debts, save so far as to bring the injured party within the protection of the statutes for the prevention of conveyances and transfers of their property by debtors in fraud of their creditors. The principle of equitable construction would justify that decision without any strain whatever of the words "debt," "debtor" or "creditor."

3. To what is said of usury and waiver of exemption in the third head-note, we will add that in *Cleghorn vs. Greeson*, 77 *Ga.* 343, the usury appeared on the face of the judgment as well as in the contract declared upon, and that the law which it violated was our own and not that of another State. We are not to be understood as ruling by implication that the law of Alabama would vitiate a waiver of exemption made here in favor of a debt pure by our law, though payable in that State, but only that the question cannot be made after judgment, no usury appearing upon the face of the record, and none being alleged save that which is obnoxious to the foreign law only.

4. The misnomer of the two partnerships, in the exemption proceedings, did not render those proceedings void as to these two creditors or either of them. There is a reasonable probability that the notices addressed as they were reached the firms for which they were intended, and if they did not, their failure is susceptible of proof, and there is no suggestion of the sort in the evidence. We think that *prima facie*, at least, such misnomers would be harmless, in view of the general certainty that matter carried through the mails will, in spite of much imperfection in

the address, reach its proper destination. This certainty is so notorious as to belong to public history, and can therefore be noticed judicially. The cases of *Smith vs. Lord*, 60 *Ga.* 462, and *Burroughs vs. White*, 69 *Ga.* 842, are neither of them in point, as will be seen by reading them.

5. There was no evidence whatever to negative the jurisdiction of the ordinary of Muscogee county to entertain the application for exemption and conduct the exemption proceedings, and the verdict on that branch of the case was unwarranted. The proceedings being regular, the presumption is in favor of the jurisdiction till the contrary is established.

The result is, that the judgment below as to the assignees is affirmed; as to the debtor (whose motion for a new trial was denied), it is reversed.