### HOWARD *v.* LONG *et al.*

The cause of action given to creditors under the Civil Code (1910), § 2220, against persons who organize a company and transact business in its name before the minimum capital stock has been subscribed, does not include an action by one whose claim or demand against the corporation is ex delicto and does not spring from contract, express or implied.
                    DECEMBER 15, 1914.

Complaint. Before Judge Pendleton. Fulton superior court. December 16, 1913.

George P. Howard brought suit against N. G. Long, T. J. Eady, W. L. Beyer, P. S. Reed, J. C. Arnall, W. D. Fowler, R. L. Arnall and others. A demurrer was filed by all of the defendants except the first five just named. The court sustained the demurrer, and dismissed the action as to the demurrants. The allegations of the

petition were substantially as follows: The defendants were the organizers of a corporation known as Senoia Duck Mills. The charter of the corporation was granted on the 21st day of January, 1910, with a minimum capital stock of $100,000. In the petition for incorporation it was stated that the entire capital stock had been fully paid in. The corporation was organized and officers were elected, who erected a mill at a cost of about $17,000, and proceeded to transact business under the charter. At the time of the commencement of business only about $10,000 in cash had been paid in on the capital stock, and only about $30,000 subscribed, and up to the time of the filing of this suit only a little more than $20,000 had been paid in, or received by the corporation, by way of subscriptions to its capital stock. Early in 1910 the plaintiff was the owner of certain machinery and personal property of the value of $45,-633.32, located in Atlanta, which he shipped to Senoia, Georgia, he having "agreed to sell said machinery and personal property to the defendants N. G. Long and T. J. Eady, for certain considerations and upon certain terms, to be by them sold to Senoia Duck Mills and installed in the mill buildings of said corporation." The machinery was shipped by the plaintiff and consigned to himself at Senoia, Georgia. When the machinery arrived at Senoia, and before plaintiff had received any part of the purchase-price, and while the cars in which same was loaded were standing upon the sidetrack, the Senoia Duck Mills, through its officers and agents, forcibly and violently took charge of the machinery and personal property, and caused the same to be carried to their plant and installed, without the authority or consent of the plaintiff. The machinery and property is now installed in the plant of the corporation, is in its possession, and has been used by it since June, 1910. The foregoing acts constituted a conversion of the plaintiff's property by the Senoia Duck Mills. Plaintiff has demanded the return of his property, and also has demanded payment therefor by the Senoia Duck Mills, or its officers and agents; and his demands have been refused. At the time his machinery and property were taken possession of by the Senoia Duck Mills and "at the time when petitioner made his contract with the defendants N. G. Long and T. J. Eady, who were in fact acting for and on behalf of Senoia Duck Mills, petitioner was without knowledge of the fact that said Senoia Duck Mills had never been legally organized, in that the minimum capital stock re-

quired by its charter had never been subscribed, and in that only a small portion of its capital stock had ever been paid in." The Senoia Duck Mills has been adjudged bankrupt, and all of its assets, including the plaintiff's property, were sold under mortgage foreclosure, and purchased by the mortgagee. The Senoia Duck Mills is insolvent and can not pay any of its debts. By reason of the facts set out, the defendants, the organizers of the Senoia Duck Mills, are liable to petitioner, and other creditors similarly situated, for the payment of his claim or debt, to the extent of the difference between the amount of the capital stock actually paid for ($20,000) and the minimum capital stock ($100,000) fixed by the charter of the corporation; and plaintiff brings his action under the provisions of the Civil Code of 1910, § 2220, to recover the value of the machinery and property described in his petition.

*J. L. & C. N. Anderson* and *Felder, Coburn & Whitman,* for plaintiff. *W. C. Wright, Watkins & Latimer,* and *Charles A. Stokes,* for defendants.

EVANS, P. J. (After stating the facts.) The plaintiff's right of action is expressly grounded on the Civil Code (1910), § 2220, which declares that "persons who organize a company and transact business in its name, before the minimum capital stock has been subscribed for, are liable to creditors to make good the minimum capital stock with interest." The plaintiff sustained no contractual relation to the corporation which was alleged to have commenced business before all of its minimum capital stock had been subscribed. If he has any action against the corporation, it must be founded in tort; for the alleged conversion and appropriation of the plaintiff's property was without his consent. The proposition raised by the demurrer is, whether the plaintiff is a creditor of the Senoia Duck Mills within the meaning of the quoted code section. This is a codification of the principle enunciated in *Burns* v. *Beck & Gregg Hardware Co.,* 83 *Ga.* 471 (10 S. E. 121). In that case two persons after procuring a charter organized a corporation without subscribing the minimum capital stock or paying in the ten per cent. required by statute, then proceeded to business, contracted debts, and made a fraudulent assignment of the corporate assets. Creditors of the corporation filed an equitable petition against the two organizers of the corporation and the corporation, to set aside the assignment, and to hold liable the corporators as well as the

corporation, charging the corporation with fraud. One of the points involved the liability of the corporators, as to which the court ruled: "As a matter of law, when the stock of a corporation is not subscribed for up to the minimum amount of capital fixed by the charter, and none of it is paid in, if the corporators organize, elect themselves officers, proceed to business, contract debts up to and beyond the nominal capital, having paid in nothing whatever, they commit a legal fraud by so doing, and are liable to creditors to make good the minimum capital, together with interest thereon, should this be necessary to discharge the corporate debts." In the opinion it was said, in substance, that the corporation was one de facto only, and had no legal right to transact business or to obtain credit; that it did obtain credit by reason of the wrongful acts of its corporators in setting it on foot prematurely and holding it out as duly organized. This conduct, said Bleckley, C. J., "was a legal fraud committed by them, and rendered them liable to respond to the corporation creditors to the extent at least of the capital stock that should have been subscribed and paid in, in the event the corporation assets proved insufficient to discharge its liabilities." The creditors in that case were attempting to assert a debt contracted in the name of the corporation. The term "creditor," as there used, was confined to those whose demands against the corporation arose ex contractu, either express or implied. The code section was up for construction in *John V. Farwell Co.* v. *Jackson Stores,* 137 *Ga.* 174 (73 S. E. 13), where it was said by Fish, C. J., that the requirement of the statute was "for the ultimate benefit of those who may extend credit to the corporation."

It is contended, however, that the word "creditor," as used in the code section, comprehends any person to whom a debt is owing by another, whether the debt arise by virtue of a contract or grow out of a trespass or tort. We do not think, in the light of the origin of the code section, and the basis upon which the principle of liability is evolved, that corporators of a de facto corporation are liable for the torts of the corporation. In most jurisdictions persons who assume to act as a corporation, when they have neither de jure nor de facto corporate existence, are held to sustain the relation of partners as to third persons, and are individually liable as such, both for torts committed and on contracts made by their agents in the course of the business, unless the person dealing with

them is estopped to deny their existence as a corporation. 1 Clark & Marshall on Private Corporations, § 78. A corporation which begins business before all of its minimum capital stock is subscribed, though not a de jure corporation, is nevertheless one de facto (*Burns* v. *Beck etc. Co.*, supra); and the corporators of a de facto corporation are not liable to third persons as partners. *Brooke* v. *Day,* 129 *Ga.* 694 (59 S. E. 769). The liability established by the statute is not to creditors by reason of any partnership existing between the corporators, but because of a fraud which the corporators perpetrated upon those with whom the corporation dealt in a contractual capacity. Indeed, it has been said that the liability of the corporators to the creditors of a de facto corporation rests upon the ground that its organizers, who acted as agents in contracting the liability, warranted their authority; viz.: that the corporation had been properly organized and was entitled under the law to engage in the business for which it was corporated. Farmers Co-operative Trust Company v. Floyd, 47 Ohio St. 525 (26 N. E. 110, 12 L. R. A. 346, 21 Am. St. R. 846). From the fundamental basis of liability of the corporators of a defectively organized corporation it is clear that the liability to creditors referred to in the code section is to creditors whose claims arise out of contract, express or implied. We have not overlooked the declaration of the code, that the relation of debtor and creditor exists "whenever one person, by contract or by law, is liable and bound to pay to another an amount of money, certain or uncertain." Civil Code (1910), § 3215. Unquestionably this is the generic meaning of the term "creditor," but, as we have undertaken to point out, it is used in the statute under consideration in its more circumscribed and ordinary meaning as denoting the holder of an obligation arising ex contractu.

A somewhat similar question arose in Nebraska. A statute of that State required every corporation thereafter created to give notice annually, in certain newspapers, of the amount of all existing debts of the corporation, and declared that in case any corporation should fail to comply with that provision, the property of all the stockholders was to be liable for the corporate debts; and it was held that the debts referred to were debts arising upon contract, and not damages for torts. Doolittle v. Marsh, 11 Neb. 243 (9 N. W. 54).

The argument is advanced, that, inasmuch as this court has de-

cided that the statute of 13th Elizabeth, against fraudulent conveyances, as codified in section 1952 of the Code of 1873, is broad enough to embrace tort-feasors in its provisions, the statute under consideration should receive a no less comprehensive interpretation. The statute of 13th Elizabeth, as so codified, declared that certain specified acts by debtors "shall be fraudulent in law against creditors, and as to them null and void." It is true that this court held that a conveyance, if fraudulent as against a creditor in the ordinary sense of that word, would seem to be fraudulent also as against any persons who had at the time of the conveyance a valid and subsisting claim of damages for trespass upon his person or property, committed by the party making the transfer. The court reached its conclusion, however, not upon an independent interpretation of the section of the Code of 1873, but construed that section in connection with the original statute of the 13th Elizabeth, which was declared to be still of force in Georgia in so far as it embraced tort-feasors in its provisions. *Westmoreland* v. *Powell,* 59 *Ga.* 256. In the Code of 1895 (§ 2695) and in the present Code of 1910, § 3224, the codifiers have added, after the word "creditor," the words "and others," so as to definitely bring the provisions against transfers by fraudulent debtors within the old English statute. There is no analogy between the statute of 13th Elizabeth and the statute under consideration, as to the meaning of the word "creditor," as respectively employed. The scope and purpose of the two statutes are entirely distinct. The former is intended to protect one who has a debt or claim for damages from having its collection defeated by a fraudulent transfer of the debtor's or tort-feasor's property. The latter originates a liability, affording to the creditor of a de facto corporation, which has conducted business before its minimum capital stock has been subscribed, a remedy in addition to that against the assets of the de facto corporation.

After a careful consideration, we think the construction given this statute in *John V. Farwell Co.* v. *Jackson Stores,* supra, does not embrace a claim of one whose liability against the organizers of the corporation is founded solely in the corporation's tort.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent, and Lumpkin, J., dissenting.*

ATKINSON, J., specially concurs in the ruling announced in the headnote, but not in all of the reasoning set forth in the opinion.

LUMPKIN, J., dissenting. I can not agree with the conclusion reached by the majority of the court. The decisions are not in perfect harmony on the subject of whether a statutory liability of stockholders includes a liability for torts of the corporation. The rulings depend very much upon the particular statutes under consideration and the language employed in them. 4 Thompson on Corporations, §§ 4853-4854. By § 2220 of the Civil Code (1910) of this State it is declared: "Persons who organize a company and transact business in its name, before the minimum capital stock has been subscribed for, are liable to creditors to make good the minimum capital stock with interest." Section 3215 declares: "Whenever one person, by contract or by law, is liable and bound to pay to another an amount of money, certain or uncertain, the relation of debtor and creditor exists between them." It would seem that a reading of these two sections together ought to settle the question; one declaring a liability to creditors, and the other declaring who are creditors. It is true that in some of the cases which have been adjudicated, the creditors who sought to enforce the liability, and in whose favor it was declared, were creditors who became such by contract; and in the discussion reference was made to persons contracting with a de facto corporation, relying on the faith of its being a corporation; and it was said that it would be a fraud on them to allow persons to set the purported corporation in motion without the minimum stock having been subscribed. But I think the real underlying reason for holding such persons liable is that the statute requires that the capital stock shall be stated in the application for a charter, so that the world may know what it is; that it is unlawful to organize a corporation and put it in operation without such minimum capital stock having been subscribed; that if stockholders do this, relatively to creditors they must make good the deficiency which they have thus unlawfully created. I do not think that the law intended that people could set a de facto corporation in motion with a very small part of the minimum capital subscribed, or, for that matter, without any subscription at all, commit torts in its name, and for which it was liable, and say to the injured persons, you must look to the corporation, and we are not liable to make good the stock up to the minimum required by law. Nor do I think that the reliance which the person contracting with the de facto corporation might place upon its minimum capital stock covers the

whole ground intended to be covered by the statute, nor that it was intended to allow liabilities for tort to go unsatisfied while those for breach of contract must be satisfied to the extent of the minimum capital. In *Westmoreland* v. *Powell, 59 Ga.* 256, it was held that where one committed an actionable tort upon the person of another, and thereby became liable and bound to pay an amount of money, certain or uncertain, the latter was so far a creditor of the former as to be protected under the law declaring void, as against creditors, all fraudulent conveyances made by insolvent debtors. Reference was made in that case to the statute of 13th Elizabeth; but the code sections defining who were creditors, and making void fraudulent conveyances as against creditors, were construed together. I do not think that the beneficial and remedial purpose of the statute should be restricted to the limits held by the majority of the court. See in this connection, for a discussion of the general subject, Henley v. Meyers, 76 Kan. 723 (93 Pac. 168, 17 L. R. A. (N. S.) 779). In this State it has been held that such a liability is one to creditors, and is not a corporate asset to be collected by a trustee in bankruptcy; but this does not affect the question of whether the person to whom the corporation is liable, whether for tort or on contract, is a creditor of the corporation within the meaning of § 2220 of the Civil Code.