McVEIGH *v.* HARRISON.

No. 11995.    DECEMBER 3, 1937.

*Hubert F. Rawls* and *W. A. Wood,* for plaintiff in error.

*W. C. Little* and *J. T. Powell,* contra.

RUSSELL, Chief Justice. The entire argument contained in the brief of counsel for the plaintiff in error is made in support of the one contention that the plaintiff in the lower court can not join J. H. McVeigh in her action against Norman S. McVeigh, because the relation of debtor and creditor does not exist between Norman S. McVeigh and Mrs. Harrison until her claim against him has been reduced to judgment.

The rulings in the first two headnotes do not require elaboration.

In *Westmoreland* v. *Powell,* 59 *Ga.* 256, appeared the following: "Willis Westmoreland committed a trespass upon the person of Powell. Powell sued him, and shortly thereafter Willis Westmoreland conveyed his house and lot in Atlanta to John G. Westmoreland for the benefit of his wife and children. The result of Powell's suit was a recovery of some two or three thousand dollars, the fi. fa. for which sum of money was levied upon the house and lot, which John Westmoreland claimed as trustee; and the question was, is it subject? The jury found it not subject under the charge of the court; whereupon Powell moved for a new trial, which was granted, and Westmoreland, the claimant, excepted.

"1, 2. The main question is, whether the voluntary conveyance by Willis Westmoreland to his family was void as against Powell, if he was insolvent at the time, or if it was intended by him to delay or defraud Powell, the court having charged the jury that Powell's claim on Westmoreland was not as a creditor and had little to do with the case, and having afterwards granted a new trial mainly, we suppose, on this ground, though also, perhaps, on the further ground that the verdict is against the weight of the evidence. On this latter point the record is silent, the judge having granted the new trial generally. We express no opinion on the weight of the evidence. The question turns in part on the proper construction of the Code, sections 1952 and 1944. Both sections occur in the same title of the Code and in the same

chapter, the chapter being entitled 'Debtor and Creditor.' Section 1944 defines the relation of debtor and creditor, and extends that relation for the purposes, it would seem, of matters embraced in the chapter, to every case where one person is bound to pay another in law any amount of money, certain or uncertain. Section 1952 confines these fraudulent conveyances to creditors, leaving out the words 'and others,' which are in the 13 Elizabeth; but it would appear, we think, from the definition of the relation of debtor and creditor in section 1944, that the legislature did not mean, by leaving out these words, to alter the whole law as understood and enforced in England and this country for years, but they meant to treat all people as debtors who were liable as tortfeasors, or otherwise, to pay money to others. The words 'liable and bound by law to pay another an amount of money, certain or uncertain,' certainly are broad enough to embrace a person liable to pay for a trespass, and that before the amount of the trespass, or the extent of the damage, is ascertained; for the words are, 'an amount of money, certain or uncertain.' Construing the two sections together, we all incline to think, and I think with much confidence, that the legislature meant to extend the meaning of debtor to one who owed another for an unascertained damage to person or property, so far as fraudulent conveyances are concerned."

In the case just cited it was held: "1. Sections 1944 and 1952, in the same chapter of the Code, should be construed together, and, construing them together, section 1952 does not contract or limit the statute (13 Elizabeth) against fraudulent conveyances by leaving out the words 'and others' after 'creditors;' but, in the sense of that section (1952), aided by 1944, the relation of debtor and creditor would seem to exist so far as to make conveyances fraudulent as against the injured party, if so in other respects, whenever 'one person is liable and bound by law to pay another an amount of money, certain or uncertain.' 2. A conveyance, therefore, if fraudulent against a creditor, in the ordinary legal sense of that word, would seem to be fraudulent, also, against any person who had, at the time of the conveyance, a valid, subsisting claim for damages for a trespass upon his person or property, committed by the party making such conveyance."

In *Banks* v. *McCandless*, 119 *Ga.* 793 (47 S. E. 332), Buck was one of two sureties on a bail-bond given by Conley in a trover

proceeding in which he was the defendant. A judgment was rendered on the bond against Conley and his sureties; and Buck, having reimbursed his cosurety, became the assignee of the execution by virtue of his payment of the balance due upon it, and in this way became the creditor of Conley. An action was brought by Buck and another creditor of Conley, seeking to have set aside certain deeds executed by Conley during his lifetime for the purpose of hindering, delaying, and defrauding creditors. A verdict was returned, adjudging the deeds attacked to be void. The administrator of Conley made a motion for a new trial, which was overruled, and he excepted. In the opinion in this case it was said: "The inculpated deed from John L. Conley to his brother, Morris J. Conley, bears date July 12th, 1883. The bail-bond in the trover suit instituted by Thornton was given in June of that year. It is insisted in the motion for a new trial that though a judgment was had in the trover suit at a later date, yet at the date of the deed the plaintiff in the trover case did not stand to Conley as a creditor, under the statute of 13th Eliz., and that Buck, who subsequently paid a balance due on the execution issued on that judgment, did not, at the date of the deed just mentioned, occupy the relation of a creditor to John L. Conley, within the meaning of that statute. And it is complained that the court· erred in charging the jury as follows: From the 'date when the bail-bond was given, the principal and sureties were bound to Thornton for the payment of the eventual condemnation-money; and when a verdict was rendered finding that John L. Conley had been guilty of a conversion of Thornton's property, and a judgment was· taken against John L. Conley and his sureties on the bail-bond, and when execution issued upon such judgment and Buck paid off a balance due on such execution, he was entitled to control such execution, as Thornton could have done before it was paid off, for his, Buck's, reimbursement; [and] if, after the giving of such bail-bond, John L. Conley made a conveyance, or conveyances, to his brother, Morris J. Conley, for the purpose of delaying or defrauding Thornton, or the sureties on his bond, as to any liability on such bond, then Buck would be a creditor, within the meaning of the law, who could attack such deed, and his executrix, standing in his place, would have the same right.' . . Our statute (Civil Code, § 2695) declares that ' the following acts by debtors shall be

fraudulent in law against creditors *and others,* and as to them null and void,'—followed by an enumeration of the acts. This court, in the case of *Westmoreland* v. *Powell,* 59 *Ga.* 256, held that though the words ' and others,' following the word ' creditors,' did not appear in the code then of force, in that section in which the provisions of the statute of 13th Elizabeth were intended to be embodied, the omission did not have the effect of limiting the operation of that statute upon fraudulent conveyances. In view of this decision, the compilers of our present code deemed it proper to insert in the section just cited the important words which had in the former codes been omitted. It is also to be noted that this court further said, in discussing that case, that ' the statute of 13th Elizabeth, in so far as it embraced tortfeasors in its provisions,' was still of force in Georgia; and the court accordingly held that a transfer by Westmoreland of property, made after he had committed an assault upon Powell and with a view to defeating the collection of damages for such assault, was void. In other words, this court held that a person having a claim for unliquidated damages, because of an injury tortiously committed upon him, was, though not in a technical sense a creditor, nevertheless within the protection of the statute. In our present code (§ 2686), the relation of debtor and creditor is thus defined: ' Whenever one person, by contract or by law, is liable and bound to pay to another an amount of money, certain or uncertain, the relation of debtor and creditor exists between them.' This definition is much broader than is generally supposed, and would seem to include a liability for a wrongful conversion of property for which trover would lie. ' In a multitude of cases it has been repeatedly adjudicated that a party bound by a contract upon which he may become liable for the payment of money, although his liability be contingent, is a debtor within the meaning of the statute avoiding all grants made to hinder or delay creditors. . . A surety is a creditor from the time the obligation is entered into, or the bond signed;' and a ' person whose claim arises from a tort, such as libel or slander, is a creditor. The date the tort or injury was committed governs in determining the creditor's status, where the conveyance was made in pursuance of a fraudulent design to defeat the judgment which might be recovered upon it. . . So a transfer to defeat a claim for deceit, . . breach of promise to marry, seduction, bastardy,

and assault and battery, may be annulled. . .' See Wait, Fraud. Conv. (3d ed.) § 90, and the numerous cases cited in support of the text. . . For the reasons above stated, we have reached the conclusion that the charge of the court on this subject was not erroneous."

In *Howard* v. *Long*, 142 *Ga.* 789 (83 S. E. 852), Howard brought an action against Long and others, as organizers of a corporation who had transacted business in its name before the minimum stock was subscribed for, his claim being based on an alleged tort. The trial court dismissed the petition on demurrer, and a majority of this court affirmed the judgment, holding: "The cause of action given to creditors under the Civil Code (1910), § 2220, against persons who organize a company and transact business in its name before the minimum capital stock has been subscribed, does not include an action by one whose claim or demand against the corporation is ex delicto and does not spring from contract, express or implied." In the opinion it was said: "The argument is advanced, that, inasmuch as this court has decided that the statute of 13th Elizabeth, against fraudulent conveyances, as codified in section 1952 of the Code of 1873, is broad enough to embrace tort-feasors in its provisions, the statute under consideration should receive a no less comprehensive interpretation. The statute of 13th Elizabeth, as so codified, declared that certain specified acts by debtors ' shall be fraudulent in law against creditors, and as to them null and void.' It is true that this court held that a conveyance, if fraudulent as against a creditor in the ordinary sense of that word, would seem to be fraudulent also as against any persons who had at the time of the conveyance a valid and subsisting claim of damages for trespass upon his person or property, committed by the party making the transfer. The court reached its conclusion, however, not upon an independent interpretation of the section of the Code of 1873, but construed that section in connection with the original statute of the 13th Elizabeth, which was declared to be still of force in Georgia in so far as it embraced tort-feasors in its provisions. *Westmoreland* v. *Powell*, 59 *Ga.* 256. In the Code of 1895 (§ 2695), and in the present Code of 1910, § 3224, the codifiers have added, after the word ' creditors,' the words ' and others,' so as to definitely bring the provisions against transfers by fraudulent debtors within the old English statute.

There is no analogy between the statute of 13th Elizabeth and the statute under consideration, as to the meaning of the word 'creditor,' as respectively employed. The scope and purpose of the two statutes are entirely distinct. The former is intended to protect one who has a debt or claim for damages from having its collection defeated by a fraudulent transfer of the debtor's or tort-feasor's property. The latter originates a liability, affording to the creditor of a de facto corporation, which has conducted business before its minimum capital stock has been subscribed, a remedy in addition to that against the assets of the de facto corporation." Chief Justice Fish and Justice Lumpkin dissented from the opinion of the majority. Justice Lumpkin wrote a dissenting opinion, but his dissent was not based on any disagreement with the holding in the *Westmoreland* case, supra, being of the opinion that the plaintiff in the *Howard* case was within the protection of the statute against fraudulent conveyance, stating that "I do not think that the beneficial and remedial purpose of the statute should be restricted to the limits held by the majority of the court." See also *Gamble* v. *Central R. &c. Co.*, 80 *Ga.* 595, 601 (7 S. E. 315, 12 Am. St. R. 276); *McElhaney* v. *Crawford*, 96 *Ga.* 174, 176 (22 S. E. 895); *Clements* v. *Jones*, 166 *Ga.* 738, 747 (144 S. E. 319); *McCranie* v. *Cobb*, 174 *Ga.* 370, 378 (162 S. E. 692), where the *Westmoreland* case was cited and the principle therein ruled recognized.

In 15 C. J. 1374-5, § 3, under the subject "Creditor" it is stated: "The term 'Creditor' has been held sufficiently comprehensive to include those holding claims arising out of tort; persons entitled to damages for torts—being broadly construed in furtherance of the purposes of remedial statutes. When used in this sense the term includes not only the holder of a certain and fixed present debt, but every one having 'a right to damages capable of judicial enforcement, whether growing out of tort or contract; . . any person having a claim or demand upon which a judgment for a sum of money, or directing the payment of money, can be recovered in an action. . . Thus one against whom slanderous words are uttered is, in legal contemplation, a creditor from the time of their utterance." In support of the proposition stated in the last sentence quoted the case of *Banks* v. *McCandless*, supra, is cited, with cases from other jurisdictions. One having a claim for damages against another by reason of the commission of a tort by the

latter is not in a general sense a "creditor." A creditor of the plaintiff in an action founded on tort can not, before final judgment, maintain garnishment proceedings against the defendant in the tort action, for in *Gamble* v. *Central R. & Bkg. Co.*, 80 *Ga.* 595 (7 S. E. 315, 12 Am. St. R. 276), it was held: "The defendant in an action for tort is not subject to garnishment till final judgment is recovered. A garnishment issued and served after a first verdict for the plaintiff in the action, which verdict is subsequently set aside and a new trial granted, and answered before a second trial is had, the answer denying any indebtedness, seizes nothing and takes no lien on the final recovery." In the corresponding division of the opinion it is said: "In the present case, if the garnishee had delayed answering until after final judgment, though the garnishments were served before, they would have been effective. Code, §§ 3536 (a), (b). The latter of these sections makes ' all debts owing to the defendant ' subject to garnishment, but prior to final judgment the damages for a tort are not a ' debt ' in the strict sense contemplated by the garnishment laws. Nor was it the purpose of *Westmoreland* v. *Powell*, 59 *Ga.* 256, to hold that torts would make debts, save so far as to bring the injured party within the protection of the statutes for the prevention of conveyances and transfers of their property by debtors in fraud of their creditors. The principle of equitable construction would justify that decision without any strain whatever of the words ' debt,' ' debtor ' or ' creditor.' " In *McElhaney* v. *Crawford*, 96 *Ga.* 174 (supra), this court held: "Where, pending an action for libel, the defendant therein died intestate, the claim of the plaintiff, even if meritorious, was not such a 'debt' against the estate of the decedent as would prevent his widow, as sole heir at law, from taking possession of his estate without administration."

From the rulings in the authorities cited above, particularly the *Westmoreland* decision, we think it to be the law of Georgia, and so hold, that the mother of a minor child killed by the negligent tortious acts of another person is within the protection of the Code, § 28-201, and may proceed in one action against the tortfeasor and the grantee named in conveyances executed by the tortfeasor, to obtain (1) a judgment for damages against the tortfeasor for the negligent tortious homicide of her child, and (2) a decree adjudging null and void as to her conveyances of real

and personal property, executed by the defendant tort-feasor subsequently to the commission of the tort, for the purpose of hindering, delaying, or defrauding the plaintiff in the collection of her claim for damages. The court did not err in overruling the demurrers. *Judgment affirmed.* *All the Justices concur.*