**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 20, 2014**

# In the Court of Appeals of Georgia

A13A1885. MORRIS v. MORRIS et al.
A14A0017. MORRIS et al. v. MORRIS.

ANDREWS, Presiding Judge.

Martha L. Morris, a resident of Georgia, is the sole surviving trustee of the Derek Morris Irrevocable Trust (the "Trust"). The Trust was created in Georgia by Martha's son Derek Morris as settlor in 1998[1] and has been located and managed in Georgia since that time. Derek funded the Trust with the proceeds of the settlement he received as a result of the litigation that ensued following a 1995 automobile collision in which he and other family members were seriously injured. Derek's 11-year-old sister lost her life.

---

[1] Co-trustee, Stephen B. Morris, is deceased.

Derek married his wife, appellee Sarah Morris, in 2004. The couple had one daughter, Iza Lily Morris, who was born while they were living in Atlanta. The couple moved to North Carolina in 2005. At the time of Derek's death, he and Sarah were estranged, and Sarah was living with her family in Georgia, but traveling back and forth to North Carolina. Unable to reach Iza Lily or her husband by telephone, Sarah returned to North Carolina. That afternoon she found Derek and Iza Lily in Iza Lily's bedroom in the couple's home. Both were dead from gunshot wounds fired by Derek first shooting Iza Lily then himself. Sarah was appointed the administrator of her decedent daughter's estate. In that capacity, she filed a wrongful death action against the Estate of Derek Morris which resulted in a default judgment in favor of the daughter's estate in an amount not of record.

In Case No. A13A1885, Martha as Trustee of the Trust, appeals from the trial court's order upon her verified petition for a declaratory judgment (the "Petition"). Therein Martha sought the trial court's guidance as to whether she should distribute the property of the Trust to Sarah as the administrator of Iza Lily's estate or to Martha's children (Derek's siblings), as beneficiaries pursuant to the terms of the Trust. On cross-motions for summary judgment, the trial court granted judgment to Sarah, declaring that North Carolina law required that the trust property be distributed

to her as Administrator of Iza Lily's Estate and not to Derek's siblings. This was contrary to the terms of the Trust which, among other things, provided that the "Trust shall be governed by the laws of the State of Georgia[.]"

In Case No. A14A0017, Sarah appeals contending that the trial court erred by (i) allowing the Trustee to secure its judgment by a trustee's bond rather than a supersedeas bond, and (ii) taxing Iza Lily's estate as the beneficiary of the Trust with the expenses of a supersedeas bond.

The Trust as created inter vivos and its property as outside the Estate of Derek Morris and not subject to Sarah as a creditor in her capacity as administrator of Iza Lily's estate, we reverse in Case No. A13A1885. Given the foregoing, Sarah's motion

to dismiss in Case No. A13A1885 is denied,[2] and Case No. A14A0017 is dismissed as moot.

In addition to selecting Georgia law as governing its interpretation, the Trust provides that upon Derek's death, the Trust property shall be distributed to any beneficiary Derek shall have appointed by his will. In the event of Derek's death intestate, the Trust provides that its property shall be distributed to Derek's living lineal descendants, if any. Absent any living lineal descendant, the Trust requires that

---

[2] Sarah's reliance upon *First Nat. Bank v. Yancey*, 207 Ga. 437 (62 SE2d 179 (1950), and its progeny for the proposition that the instant appeal should be dismissed for lack of standing to complain is inapposite and inconsistent with the Trustee's duty to prudently administer the Trust in accordance with its terms and purposes. See OCGA § 53-12-241. Specifically and citing *Yancey*, the motion to dismiss asserts that the Petition sought a declaratory judgment to determine the rights of the interested parties "under the terms of the Trust" and "a declaration of rights under a will (or trust)." However, the Trustee never sought a construction of the terms of the Trust, as in *Yancey*. See *Yancey*, 207 Ga. at 438 (noting that the executors "got what they prayed for, a construction of the will." To the contrary, the Trustee asked only for enforcement of the plain terms of the Trust and a declaration regarding Sarah's third-party claim to the proceeds thereof as administrator of Derek's estate. Also, unlike *Yancey* and as evidenced by Sarah's post-judgment complaint against the Trustee for damages and an accounting, compliance with the trial court's order would obviously have been insufficient to protect the Trustee from potential liability for breach of fiduciary duty. See id. at 437 ("[A] party is aggrieved by a judgment or decree when it operates on his rights of property, or bears directly upon his interest.") (citations and punctuation omitted.).

its property be distributed equally to Derek's living siblings as named in the Trust,[3] "with an equal share, per stirpes, for the living lineal descendants of any of them not then in life."

After Derek's death, the Trustee determined that the Trust assets should be distributed to Derek's living siblings because Derek died intestate, and his only lineal descendant, Iza Lily, predeceased him. Subsequently, however, the Trustee received a demand letter from counsel for Sarah opposing any distribution of the assets of the Trust until it could be confirmed that Derek had, in fact, died intestate not having exercised his power to appoint Sarah, his descendants or others as a beneficiary. The letter also informed Martha that "a cause of action for wrongful death would arise on behalf of [Sarah] . . . , the Trust as "an asset of [Derek's] estate . . . ." Following its hearing on cross-motions for summary judgment, the trial court entered judgment for Sarah, declaring that

> Derek Morris shot and killed his only lineal descendant, Iza Lily Morris, then six years of age before shooting and killing himself. The killing took place in the [S]tate of North Carolina where Derek Morris, Sarah Morris and Iza Lily Morris had resided for over five years. Per the

---

[3] As set out in the Trust, Derek's living sibling are appellees Conan Morris, Ingrid Morris, Gabriel Morris, Michelle L. Morris, and Ethan Morris.

law in North Carolina (N.C.G.S.A. §28A-24-5),[4] where . . . Derek Morris and Iza Lily Morris died, Iza Lily Morris did in fact survive her killer, Derek Morris[,] and as such was a surviving lineal descendant at the time of Derek Morris' death. As such, Iza Lily Morris is the beneficiary of the Trust. Since the child is deceased, her estate is entitled to the proceeds of the Trust . . ., not[ing] that while Georgia law certainly governs the interpretation and administration of the Trust, North Carolina probate law governs who predeceased who within its jurisdiction.

The Trustee contends that the trial court erred in denying her motion for summary judgment on the Petition and in granting Sarah's motion for summary judgment on Count 2 of her counterclaim insofar as it asserted that Iza Lily was

---

[4] NCGSA § 28A-24-5 provides

[n]otwithstanding any other provisions of this Article, solely for the purpose of determining whether a victim is entitled to any right or benefit that depends on surviving the death of a slayer under G.S. 31A-3, the slayer is deemed to have predeceased the victim and the victim is deemed to have survived the slayer by at least 120 hours (or any greater survival period required of the victim under the slayer's will or other governing instrument) unless it is established by clear and convincing evidence that the slayer survived the victim by at least 120 hours.

6

properly the beneficiary of the Trust as Derek's sole lineal descendant under North Carolina law.[5] The grant of summary judgment was error.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citations, footnote, and punctuation omitted.) *Layer v. Clipper Petroleum*, 319 Ga. App. 410, 411 (735 SE2d 65) (2012).

The law governing the meaning and effect of trust provisions is set out in OCGA § 53-12-5. In relevant part, it provides that the law designated in a trust agreement, shall determine the meaning and effect of the provisions thereof "unless the effect of the designation is contrary to the public policy of the jurisdiction having the most significant relationship to the matter at issue." OCGA § 53-12-5 (1). We

---

[5] Otherwise, the trial court granted the Trustee's motion for summary judgment as to Counts 1 and 3 of the Petition and denied Sarah's motion for summary judgment thereon. The trial court ruled that Count 4 of Sarah's counterclaim was moot given its ruling in her favor as to the distribution of the Trust funds, but in light of the potential for an appeal of the case enjoined any such distribution "to any party other than Sarah Morris as the Administrator for the Estate of Iza Lily Morris."

conclude that the Trust bears the most significant relationship to the State of Georgia. Pertinently, the Trust was executed in Georgia. At the time the Trust was signed and delivered, all the parties to the Trust lived in Georgia. Since that time, the Trust has always been kept in and managed in Georgia. The Trust specifically selects Georgia law as governing its provisions. And the law designated in the Trust is not contrary to Georgia public policy, Georgia having declined to enact a statute akin to NCGSA § 28A-24-5 notwithstanding this Court's decision in *Keith v. Johnson*, 211 Ga. App. 678 (440 SE2d 230) (1993). In *Keith*, we held that while OCGA § 53-4-6 deprives a murderer and his heirs of any property or interest in property held by the victim, it neither makes the victim the heir of the murderer, nor by its terms is it applicable to trust property passing inter vivos. Id. at 681 (1) (b).

Sarah argues that North Carolina has the most significant relationship to the Trust because the crime by which Derek took Iza Lily's life took place in North Carolina; North Carolina law enforcement investigated that crime; the murder-suicide involved residents of North Carolina; and the estates of Iza Lily and Derek are being administered under North Carolina law. We are not persuaded.

Sarah's argument relies heavily on North Carolina's probate law reversing the order of death to permit the victim to inherit from his or her slayer. As was first

8

evidenced in her demand letter to the Trustee, and, upon citing *Thomas v. Morrisett*, 76 Ga. 384 (1886), on summary judgment and on appeal, Sarah erroneously presumes that the Trust property passed to Derek's estate upon his death as a North Carolina domiciliary – this making that property subject to North Carolina probate law enforceable in Georgia. In *Thomas*, the Georgia Supreme Court permitted the enforcement in Georgia of a will that had been admitted to probate in Alabama because "the personal property of a deceased person passes and is to be administered according to the law of his domicile." Id. One's status as a domiciliary, therefore, is a significant relationship in the context of a conflict of laws question regarding the enforcement of a will admitted to probate in another state.

However, the jurisdiction having the most significant relationship to a will in the context of probate law, whether that of North Carolina or Georgia, does not arise where, as here, the settlor has transferred legal title to property to a trust's trustee.[6] See OCGA § 53-12-25 (a) ("Transfer of property to a trust shall require a transfer of legal title to the trustee.") Because legal title to the property in the Trust transferred to Martha as Trustee, such property passed outside the settlor's probate estate. See OCGA §§ 53-1-2 (17) ("'Will means the legal declaration of an individual's

---

[6] Derek funded the Trust in the amount of $300,000.

testamentary intention regarding that individual's property . . . .") and 53-7-30 ("[T]he personal representative shall prepare an inventory of all the property of the decedent."); *See also* 1 Ga. Wills & Administration, § 2.4 E. ("Because the settlor no longer holds title to [the trust's] property, the property does not become part of the settlor's probate estate.")

Sarah also argues North Carolina's relationship to the Trust as the most significant in the context of a state's "interest in wrongs committed within its boundaries." *Dowis v. Mud Slingers*, 279 Ga. 808, 812 (621 SE2d 413) (2005). She points to evidence showing that Iza Lily was murdered in North Carolina; that the murder was investigated in North Carolina by North Carolina law enforcement for the proposition; and argues that North Carolina has the most significant relationship to the interpretation of the Trust. We are satisfied, however, that the judgment entered in Sarah's favor in the wrongful death action she brought against Derek's estate was sufficient to vindicate North Carolina's relationship interest in Iza Lily's murder.

10

In *King v. King*, 218 Ga. 534 (129 SE2d 147) (1962),[7] the Supreme Court of Georgia held that "a trust of moveables created by an instrument inter vivos is administered by the trustee according to the law of the state where the instrument creating the trust locates the administration of the trust." Id. at 537. This is such a case. The Trust was not a part of Derek's probate estate, and it was executed in Georgia where all the parties (including the trustor, trustee, and beneficiaries lived), and where the trust res has always been kept and managed. It follows that Georgia's relationship to the Trust is more significant than that of North Carolina, and that, consistent with Georgia public policy, Georgia law governs the meaning and effect of the provisions of the Trust. Summary judgment for Sarah in her capacity as administrator of Iza Lily's estate and against the Trustee as to Derek's siblings as the proper beneficiaries of the Trust, was error on such account.

In the alternative, however, Sarah contends that the grant of summary judgment for her should be affirmed, arguing that OCGA § 53-12-82 (2) enacted in 2010,

---

[7] Although *King* pre-dates the current Georgia Trust Code, it nevertheless remains applicable to the extent that it does not conflict with current law. See OCGA § 53-12-3 ("Except to the extent that the principles of common law and equity governing trusts are modified by this chapter or another provision of law, those principles remain the law of this state.")

11

rendered the spendthrift clause in the Trust invalid against her as a judgment creditor of the settlor – this in light of the judgment she obtained in the wrongful death action she filed against Derek's estate, as administrator of Iza Lily's estate. This argument is without merit.

As to irrevocable trusts, whether containing a spendthrift provision or not, OCGA § 53-12-82 (2) pertinently authorizes "creditors or assignees of the settlor [to] reach the maximum amount . . . that could have been distributed to or for the settlor's benefit immediately prior to the settlor's death." Given the foregoing, it is necessary to determine whether Sarah as a judgment creditor in tort, as above, may be deemed a creditor within the meaning of the statute. There is no claim that Sarah was Derek's assignee.

At common law and prior to the enactment of the 2010 Revised Georgia Trust Code, spendthrift provisions were valid to protect trust assets from creditors where, as here,[8] the settlor and income beneficiary was not the trustee and did not retain a

---

[8] The power of appointment in the Trust was plainly limited as follows:

"6.　　Upon the death of the [Settlor], the Trustee shall distribute all of the Trust Estate then remaining to or for the benefit of the [Settlor's] spouse, the [Settlor's] lineal descendants, the spouses of the [Settlor's] lineal descendants, the [Settlor's] siblings, the

12

general power of appointment.[9] See, e.g. *Avera*, supra, 253 Ga. at 17 (1); *Phillips*, supra, 286 Ga. at 619-620. Thus, the statute Sarah cites regarding the validity of spendthrift provisions is in derogation of common law and, as such, must be strictly construed. See *Couch v. Red Roof Inns*, 291 Ga. 359, 364 (729 SE2d 378) (2012) ("The actual canon of statutory construction is that statutes in derogation of the common law must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute.") (citations and punctuation omitted.)

OCGA § 53-12-82 (2) refers specifically to "creditors or assignees of the settlor. . . ." The Trust terminated "[u]pon the death of the [Settlor]" and was to be distributed to the remaindermen at that time. Because Sarah did not have a judgment

---

spouses of the [Settlor's] siblings, and the lineal descendants of the [Settlor's] siblings, in such manner, in trust or otherwise, as the [Settlor] shall appoint by a provision in his Last Will and Testament which refers to and specifically exercises this power.

[9] A general power of appointment was viewed as objectionable because, in effect, it made the settlor the sole beneficiary of his trust's assets, allowing the settlor to avoid his creditors and, upon his death, return them to his estate by his will. See *Avera v. Avera*, 253 Ga. 16, 17 (1) (315 SE2d 883) (1984); *Phillips v. Moore*, 286 Ga. 619, 619-620 (690 SE2d 620) (2010).

against Derek at the time of his death, she was not then his "creditor" pursuant to the statute strictly construed.

Further, and given its plain and ordinary meaning in Georgia law, the term "creditor" denotes "the holder of an obligation arising ex contractu" and not in tort. *Howard v. Long*, 142 Ga. 789, 793 (83 SE 852) (1914); see also *McVeigh v. Harrison*, 185 Ga. 121,129-130 (194 SE 208) (1937) ("One having a claim for damages against another by reason of the commission of a tort by the latter is not in a general sense a 'creditor.'") More specifically in terms of trusts and estates, the term "creditor" has been used only as to those holding a claim in contract. Notably, OCGA § 9-3-93 provides for an extension of the statute of limitation for creditors of an estate until a personal representative is appointed. Apparently realizing that "creditor" as used in the foregoing Code section does not include individuals with tort claims, the General Assembly enacted OCGA § 9-3-98 to make clear that "[t]his article shall apply to tort actions as well as actions on contracts." See, e.g., *Jefferson Pilot Fire & Cas. Co. v. Burger*, 176 Ga. App. 471, 474 (336 SE2d 591) (1985). Sarah also fails to address those Georgia cases holding that a person with a tort claim is "not in a general sense a creditor." See, e.g., *McVeigh*, supra, 185 Ga. at 130; *Banks v. McCandless*, 119 Ga. 793, 798 (47 SE 332) (1904); *McElhaney v. Crawford*, 96 Ga.

14

174, 176 (22 SE 895) (1895); and *Hodge v. Howes*, 260 Ga. App. 107, 110 (3) (578 SE2d 904) (2003). Moreover and also illustrative, Sarah fails to address the fact that the General Assembly does not consider the term "creditor" as encompassing tort claimants in fraudulent conveyance cases. See *Rolleston v. Cherry*, 237 Ga. App. 733, 735 (521 SE2d 1) (1999) ("By its specific terms, [OCGA § 18-2-22] applies to 'creditors and others.' These 'others' include plaintiffs with claims against debtors 'liable as tortfeasors,' or otherwise for an unascertained damage to person or property, so far as fraudulent conveyances are concerned.") (citation and punctuation omitted.).

We conclude that the term "creditors" as used in OCGA § 53-12-82 (2), strictly construed, as above, is not a construction so restrictive as to ignore the relevant statutory language. See *Speed v. Speed*, 263 Ga. 166, 167 (1) (430 SE2d 348) (1993) ("[F]or this Court to simply ignore that provision in determining the effect of the particular statutory language would be contrary to the generally accepted principles for construing statutes.") (citations and punctuation omitted.). Sarah, therefore, may not reach the assets of the Trust upon the wrongful death judgment she obtained against Derek's estate.

15

Given the foregoing, the order of the trial court in Case No. A13A1885 must be and is reversed. Case No. A14A0017, therefore, is dismissed as moot.

*Judgment reversed in Case No. A13A1885. Appeal dismissed in Case No. A14A0017. Dillard and McMillian, JJ., concur.*